**Adriaan DE CONINCK, Plaintiff,**

v.

**PROVIDENT LIFE AND ACCIDENT INSURANCE COMPANY, Exide Corporation, and General Battery Corporation, Defendants.**

No. 89–1394–K.

United States District Court, D. Kansas.

Sept. 5, 1990.

---

Gary K. Jones, Smith, Shay, Farmer & Wetta, Wichita, Kan., for plaintiff.

Kenneth M. Clark, Young, Bogle, McCausland, Wells & Clark, Wichita, Kan., for defendants.

## MEMORANDUM AND ORDER

PATRICK F. KELLY, District Judge.

Adriaan de Coninck was employed by General Battery Corporation for six months in late 1982 and early 1983. His employment was terminated on February 4, 1983 for unsatisfactory job performance. Although he subsequently applied for several jobs, he was unable to secure any employment until September, 1985, when he began work as manager of an apartment complex in Wichita. Mr. de Coninck has been continuously employed at that job to the present day.

While at General Battery, de Coninck received medical treatment on several occasions. On September 5, 1982, he was admitted to Allentown Sacred Heart Hospital complaining of severe epigastric pain. The hospital's diagnosis of de Coninck was that

he was suffering from viral enteritis and possible gallstones.

Mr. de Coninck returned to the hospital on October 22, 1982 with complaints of epigastric pain. His diagnosis was alcoholic pancreatitis. He was not given any medication nor was any specific treatment prescribed. The hospital did recommend a bland diet and the avoidance of any alcohol. On neither visit to the hospital did anyone diagnose any respiratory ailment.

Mr. de Coninck subsequently had an office conference with Dr. Michael Ufberg. This conference on December 20, 1982 was held as a follow-up to de Coninck's earlier hospitalization. Dr. Ufberg made no changes in de Coninck's treatment and did not suggest any restriction of his work activities.

Several months later, de Coninck was terminated from his job at General Battery. He did not seek any medical treatment for over a year and a half. In September, 1984, de Coninck entered Queens Hospital in New York with a complaint of acute gastritis. From the time of his termination at General Battery in early 1982 until mid–1985, de Coninck was not under the regular care of any physician.

In July, 1985, de Coninck first saw Dr. Lawrence Lay, a Wichita, Kansas physician and addictionologist. Dr. Lay is in charge of the drug and alcohol treatment program at Charter Hospital in Wichita. Mr. de Coninck had been hospitalized on July 15, 1985 for pancreatitis. Dr. Lay's final diagnosis was long-standing chronic and acute alcoholism, with its accompanying exacerbations. Dr. Lay defines pancreatitis as an inflammation of the pancreas, caused, in de Coninck's case, by alcohol.

After examining de Coninck further, Dr. Lay concluded that there was no reason for de Coninck's unemployment and recommended that he look for a job. Mr. de Coninck has apparently quit drinking and has had no recurrence of pancreatitis since July, 1985. However, de Coninck continued to receive treatment for alcoholism until November 21, 1986. According to Dr. Lay, de Coninck was employable on that date. In Dr. Lay's opinion, de Coninck did not become disabled until he began experiencing leg pains in late 1989.

Mr. de Coninck currently complains of disability due to pancreatitis and chronic respiratory disease. He was first diagnosed as suffering from respiratory problems in 1985, when tests were conducted at St. Francis Medical Center in Wichita. As noted earlier, none of the earlier treatments de Coninck received while he was employed at General Battery gave any indication of a respiratory ailment.

General Battery had received a group policy of long-term benefits from Provident Life and Accident Insurance which provided coverage for General Battery's employees. The policy was part of an ERISA-governed employee welfare benefit plan. Under General Battery's group long-term disability benefits booklet, coverage is provided for occurrences of total disability arising during a claimant's employment. Total disability occurs if

(1) during the Waiting Period and the first twenty-four months of any period of total disability, you are unable to perform the duties of your occupation or an alternative position offered by your Employer;

(2) during continuation of the period of total disability beyond the Waiting Period and the first twenty-four months, you are unable to engage in any business or occupation or to perform any work for compensation, gain or profit for which you are reasonably fitted by education, training or experience.

The "Waiting Period" is defined as the period starting on the first day of disability and extending to the date the employee has been disabled for six months.

The policy contains several other provisions relevant to the present action. The policy provides that a claimant must be under the regular care and treatment of a physician as a prerequisite to receiving benefits. Under the provisions for making claims under the group plan, the group long-term disability benefits booklet provides:

Written proof of total disability must be furnished to the Provident at its said office within ninety days after any period of disability for which benefits are claimed under the Group Policy. Failure to furnish such proof within the time required shall not invalidate nor reduce any claim if it was not reasonably possible to give proof within such time, provided such proof is furnished as soon as reasonably possible.

The booklet also contains a limitations provision on the filing of legal actions:

No action at law or in equity shall be brought to recover on the Group Policy prior to the expiration of sixty days after written proof of total disability has been furnished in accordance with the requirements of the Group Policy. No such action shall be brought after the expiration of three years after the time written proof of loss is required to be furnished.

Mr. de Coninck has received Social Security disability benefits. The ALJ awarding benefits designated February 4, 1983 as the date of onset of his disability. Mr. de Coninck's first written claim against Provident, though dated November 17, 1986, was received by Provident in late January, 1987. The present action was filed by de Coninck later in 1987.

Defendant Provident has moved for summary judgment. A hearing on the defendant's motion was held August 31, 1990. For the reasons discussed herein, the Court concludes that the defendant's motion must be granted.

Summary judgment is proper where the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). In considering a motion for summary judgment, the court must examine all evidence in a light most favorable to the opposing party. *McKenzie v. Mercy Hospital,* 854 F.2d 365, 367 (10th Cir.1988). The party moving for summary judgment must demonstrate its entitlement to summary judgment beyond a reasonable doubt.

*Ellis v. El Paso Natural Gas Co.,* 754 F.2d 884, 885 (10th Cir.1985). The moving party need not disprove plaintiff's claim; it need only establish that the factual allegations have no legal significance. *Dayton Hudson Corp. v. Macerich Real Estate Co.,* 812 F.2d 1319, 1323 (10th Cir.1987).

In resisting a motion for summary judgment, the opposing party may not rely upon mere allegations or denials contained in its pleadings or briefs. Rather, the nonmoving party must come forward with specific facts showing the presence of a genuine issue of material fact for trial and significant probative evidence supporting the allegation. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 256, 106 S.Ct. 2505, 2514, 91 L.Ed.2d 202 (1986). Once the moving party has carried its burden under Rule 56(c), the party opposing summary judgment must do more than simply show there is some metaphysical doubt as to the material facts. "In the language of the Rule, the nonmoving party must come forward with 'specific facts showing that there is a *genuine issue for trial.'*" *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986) (quoting Fed.R. Civ.P. 56(e)) (emphasis in *Matsushita*). One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses, and the rule should be interpreted in a way that allows it to accomplish this purpose. *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

The case is presently before the court on review from a determination by the plan fiduciaries. The fiduciaries concluded that de Coninck's disability claim was not covered under the plan. The court is obliged to undertake a *de novo* review of the merits of the claim. *Firestone Tire & Rubber Co. v. Bruch,* 489 U.S. 101, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989).

Provident has raised several defenses against the present claim. These defenses include (1) that de Coninck was not disabled while he was employed by General Battery, (2) that de Coninck did not give the 90–day

notice required under the policy, (3) that no satisfactory proof of disability has been given, (4) that the present action was not timely filed under the terms of the policy, and (5) that de Coninck's lack of regular care and treatment by a physician invalidates his claim. The court finds the first two of these arguments to be meritorious, providing independent justification for the granting of summary judgment.

### 1. *Coverage*

■■■ The first and main issue is whether de Coninck was disabled, within the meaning of the policy, on February 4, 1983. Coverage under the group policy terminates on an employee's termination. Thus, de Coninck's claim against Provident and General Battery can succeed only if there is some proof that he was disabled on or before February 4, 1983, the last date of his employment. Mr. de Coninck makes no argument that he was disabled before that date, only that he was disabled on that date.

There is no satisfactory proof that de Coninck was disabled on February 4. In his deposition, de Coninck stated that he worked through and *on* February 4. Under the policy's definitions, total disability does not exist if the claimant is able to work.

In response to the defendant's motion for summary judgment, de Coninck has advanced several alleged facts in support of his claim of disability on February 4. First, he cites his own affidavit which states that he was at General Battery and tried to work but could not do so. Second, he cites statements from Dr. Lay and Dr. Ufberg. And finally, he stresses the ALJ's determination in the Social Security claims proceeding that disability occurred on February 4.

None of the cited evidence provides satisfactory proof of disability on February 4. Mr. de Coninck's affidavit blatantly contradicts his earlier deposition statement in which he testified that he performed the duties he was required to perform through and including February 4. The medical evidence is also dubious. Mr. de Coninck

cites Dr. Lay's report of October, 1986, in which Dr. Lay states that de Coninck was unable to work and had been totally disabled since February 4, 1983.

However, Dr. Lay's deposition has clarified his position. Dr. Lay testified that he used the February 4 date simply because that was the date used by the ALJ in the Social Security proceeding, and he presumed it was correct. Dr. Lay further testified that, having not seen de Coninck prior to July, 1985, he was unable to give any medical opinion as to his condition prior to that date. Indeed, it is Dr. Lay's opinion that de Coninck was able to work in 1985 and that his disability only arose in 1989, two years after the present civil action began.

Mr. de Coninck also cites a letter he received from Dr. Ufberg after the initiation of the present action. The May 22, 1989 letter by Dr. Ufberg states that he had received the ALJ's findings sent by de Coninck, and that he was in concurrence with those findings. The letter does not state any independent opinion that de Coninck was disabled on February 4. However, the real problem with the letter is not its vagueness, but with any opinion by Dr. Ufberg relating to de Coninck's condition on February 4, 1983.

Dr. Ufberg had seen de Coninck as a patient several months before the date of his termination and has not seen him since. Moreover, an opinion by Dr. Ufberg that de Coninck was in fact totally disabled would entirely contradict both his own contemporaneous report and the deposition testimony of de Coninck. Dr. Ufberg's medical report contains no mention of any significant disability. The report states that de Coninck was to totally abstain from alcohol and follow a low fat, milk free diet. Otherwise, the report concludes: *"His activity was essentially unrestricted* and his medications were none."

Any opinion by Dr. Ufberg that de Coninck was disabled would also contradict the sworn testimony of his former patient. As noted earlier, Dr. Ufberg only saw de Coninck several months prior to his termination on February 4. If Dr. Ufberg now

opines (in contradiction of his contemporaneous report) that de Coninck was totally disabled, that opinion can only be based on his observations of his patient during late 1982, and requires the conclusion that de Coninck was disabled from December, 1982 to his termination the following February and throughout the intervening months. Yet, also as noted earlier, de Coninck clearly states in his deposition that during this time he was at work performing the duties of his employment.

Finally, de Coninck relies on the conclusion of the ALJ that he was disabled from February 4, 1983. This court is obliged to conduct a *de novo* review of de Coninck's claim, and as a result, the earlier findings in this civil action by the plan fiduciaries have no weight. By the same token, the determination of the ALJ in an earlier and unrelated claim for Social Security benefits is utterly irrelevant. Provident and General Battery were not parties to the Social Security proceedings, and any use of the findings in those proceedings in the present case would violate the rules relating to collateral estoppel. *Bishop v. Provident Life*, Civ. Case No. 4–89–081 (E.D.Tenn. May 29, 1990).

In summary, there is no credible evidence that de Coninck was in fact totally disabled when he was terminated on February 4, 1983. Rather, the evidence in the record submitted to the court indicates that any disability, if such exists, occurred years later.

### 2. *Timely Notice*

■ The second argument relates to notice. Even assuming de Coninck suffered a total disability on February 4, the group policy requires some form of notice and proof of loss being given to Provident within 90 days. In the present case, it took de Coninck well over three years to provide notice to Provident after his last day on the job.

In response to Provident's defense relating to the lack of timely notice, de Coninck presents two arguments. First, he argues that the notice provision in the policy does not require notice within 90 days of the onset of the disability. The provision states that notice and proof of loss must be given "within 90 days after any period of disability for which benefits are claimed." Mr. de Coninck argues that this means only that notice must be given after the *end* of the disability period.

The problem with this interpretation is that it renders the notice of claim provisions of the policy nonsensical. In the case of total and permanent disability, it would mean that the claimant need *never* give notice of his claim to the issuer of the policy. This would render meaningless this portion of the policy, which is explicitly designed to ensure that the policy issuer receives information on claims "as soon as reasonably possible." The only reasonable interpretation of the 90–day notice and proof of loss requirement is that it runs 90 days after the start of the period of disability.

Plaintiff's argument relating to a lack of prejudice must also be rejected. This is not case where the claimant has waited a few days past the 90–day limit, nor even a case where he has waited six months or a year before submitting notice or proof of loss. Here, de Coninck waited over three years before the proof of loss was submitted. There is no evidence that submission of a proof of loss was not reasonably possible at an earlier period (assuming, of course, that a disability in fact existed). Under such circumstances, the delay has clearly prejudiced Provident's right to conduct a reasonably contemporaneous medical examination of the claimant to assess his disability status. Even assuming there was a total disability on February 4, 1983, the delay in giving notice precludes the present claim.

### 3. *Proof of Permanent Disability*

Provident argues that the documentation accompanying de Coninck's claim is insufficient. This argument really is not a severable, independent defense. It mirrors, and relies upon, the same arguments relating to the issue of coverage (i.e., whether or not the medical reports of Drs. Lay and Ufberg demonstrate a total disability). If those

medical reports in fact showed the existence of a total disability, the proof of permanent disability requirements of the policy would be satisfied. But since, as discussed earlier, those reports fail to show any total disability, there is no coverage, and the issue of proof of disability under the policy becomes moot.

### 4. Policy Limitations

■ Provident next contends that the present action is barred by the three-year limitations provision contained in the policy. ERISA provides a general three-year limitations period for breach of a fiduciary obligation or violation, starting from the date the plaintiff became aware of the breach. 29 U.S.C. § 1113.

Here, the alleged breach is Provident's denial of de Coninck's disability claim. Provident seeks to apply a different measure of limitations, the policy provision which provides that no action may begin more than three years after the date proof of loss was required. To the extent that this starting point for the limitations period differs from that which is extended to claimants under 29 U.S.C. § 1113, the limitations period defined by Congress in ERISA must control. Accordingly, the court concludes that the limitations period of the policy, to the extent it offers a measure of timeliness different from that of ERISA, is not a legitimate defense to the present action.

### 5. Regular Care of a Physician

■ The final argument advanced by Provident is that benefits are not awardable because the claimant was not under the regular care of a physician. Provident correctly notes that de Coninck was not under the care of a physician at the time of his termination, nor was he under the regular care of any physician until July, 1985. However, the policy merely states: "In order to receive benefits you must be under the regular treatment of a legally qualified physician."

The policy is ambiguous. It says nothing about when this "regular care" must occur. It does not state whether the regular physi-

cian care must exist at the time the claimant first suffers from the disability. This provision may mean simply that the claimant must be under the regular care of a physician at the time he receives benefits. If that is the correct interpretation, and since the policy must be construed if possible in de Coninck's favor it is also the necessary interpretation, then the provision is no bar to the present claim. There is no dispute that de Coninck is now in the regular care of a physician and any prerequisite to an award of benefits is therefore met.

### 6. Waiver

Finally, there is an argument advanced by de Coninck that Provident has waived its defenses not relating to coverage (i.e., issues 2 through 5 above). Since, as discussed above, there is no coverage under the policy, de Coninck's waiver argument is no bar to an award of summary judgment on behalf of Provident. However, since it may potentially apply to Provident's lack of notice argument, the court will discuss the issue briefly.

Plaintiff's present argument relates to the correspondence between the parties in 1986 and during subsequent years. While the company cited the various potential defenses to any claim in its letters to de Coninck (including the failure to provide the 90-day notice), it still wrote that "if you have additional information which you wish to submit documenting Mr. de Coninck's disability from February 4, 1983 to the present time, we would appreciate your providing documentation for our reviews." In several other letters, the company also said that it would accept further medical documentation.

■ The plaintiff's waiver argument must be rejected, not because of the argument advanced by Provident that estoppel is never relevant in an ERISA action, but because the facts of the case simply do not present an appropriate cause for the application of that equitable doctrine. It is correct that a fiduciary's liability under ERISA cannot be affirmatively expanded by oral modifications of a qualified plan; the ERISA-qualified employee group plan

must be in writing. *Straub v. Western Union Tel. Co.*, 851 F.2d 1262 (10th Cir. 1988). ERISA preempts claims by plaintiffs which are based solely on state law doctrines, such as estoppel. *Hermann Hospital v. Meba Medical & Benefits Plan*, 845 F.2d 1286 (5th Cir.1988).

Here, however, the plaintiff's claim is based on a written plan. The intended use of estoppel relates only to the insurer's relinquishment of specific defenses such as a lack of notice. Such limited uses of equitable doctrines do not undermine the fundamental reliability of ERISA plans themselves, in contrast to the effect which would be created by permitting oral modifications to the policy itself. *Cf. Straub*, 851 F.2d at 1265.

 Instead, waiver does not exist in the present case for the simple reason that the requirements for its application are not present. As a general rule, proof of disability is not waived "merely by requesting, after being notified of the disability, that such proof be made." 14 Couch on Insurance 2d, § 49:808 at 256. A policy requirement for timely notice may be waived where

> an insurer requires or receives proofs of loss, and subsequently requires the claimant to furnish additional proofs, or to amend the proofs already filed, or to perform some similar act, and at the time has knowledge of breaches of any of the conditions of the policy, or of any other cause, such as misrepresentations, etc., which might be a defense to any action on the policy, *and remains silent as to such defense,* ...

*Id.* § 49:810 at 258 (emphasis added).

Here, Provident did not remain silent. During its correspondence with de Coninck it specifically mentioned the 90–day notice requirement as a potential defense to his claim. There is nothing in Provident's letters to de Coninck indicating any intent to abandon that potential defense. The company's letters simply expressed a willingness to accept additional information, nothing more. Forewarned of the notice requirement's possible application, de Con-

inck is not entitled to the protection of equitable estoppel.