**Marion CIULLA, Plaintiff**

v.

**USABLE LIFE, Defendant.**

**No. CIV 92–2242.**

United States District Court,
W.D. Arkansas,
Fort Smith Division.

Sept. 23, 1994.

Lawrence W. Fitting, Fort Smith, AR, for plaintiff.

Allan W. Horne, Mark H. Allison, Davidson, Horne & Hollingsworth, and Patrick E. Hollingsworth, Dover & Dixon, Little Rock, AR, for defendant.

## MEMORANDUM OPINION

HENLEY, Senior Circuit Judge.*

Marion Ciulla brought this action seeking benefits under a group long-term disability policy that USAble Life issued to Ciulla's former employer. The policy is an employee benefit plan as defined by the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. §§ 1001–1461. The issue is whether the plaintiff was disabled within the meaning of the policy on the last day of his employment, which is when his coverage under the defendant's policy ended. Presently before the court are plaintiff's and defendant's motions for summary judgment. After carefully considering the entire record and argument by counsel, the court has decided to deny the plaintiff's motion for summary judgment and to grant the defendant's motion for summary judgment.

## I. BACKGROUND

The following facts are undisputed by the parties. The plaintiff, who was born August 7, 1933, was employed by the Riverside Furniture Company ("Riverside") from January of 1970 through December 29, 1989. He functioned in a management capacity in various departments over the years. Riverside secured long-term disability insurance for its employees under a group policy issued by the defendant. The plaintiff's coverage began on May 1, 1989, and ended on December 29, 1989, the plaintiff's last day of work. In June of 1991, the plaintiff filed an application with the defendant for long-term disability benefits, claiming that he was disabled on December 29, 1989.

The plaintiff's claim of disability is based on his heart condition. In 1982, he suffered a heart attack and underwent bypass surgery. He subsequently returned to work at Riverside. In the spring of 1988, the plaintiff periodically began to experience pain and a burning sensation in the abdomen, chest, and mid-back. He was seen by his treating physician, Dr. Lawrence Price, at regular intervals. On November 11, 1989, the plaintiff went to a hospital emergency room with complaints of chest pain, which was thought to be epigastric pain. The plaintiff saw Dr. Price on November 28, 1989, and the doctor's notes indicate that the plaintiff had experienced an episode of mid-back pain, had gone

* J. Smith Henley, United States Senior Circuit Judge, Eighth Circuit, sitting by designation.

to the emergency room, and that the EKG results were normal. Dr. Price arranged for the plaintiff to undergo a sonogram of the gallbladder on November 30, 1989. The sonogram results were negative.

At this point, the plaintiff was still working for Riverside. On December 22, 1989, the plaintiff left for a two-week vacation. However, one week into the vacation he was called back to work and his employment was terminated on December 29, 1989. At the same time, as part of a company-wide reduction in force, Riverside terminated approximately twenty other employees.

The next time that the plaintiff saw his doctor after the November 1989 visit was January 30, 1990. The doctor's notes indicate no significant change in the plaintiff's condition and do not suggest any limitations on the plaintiff's activities. Dr. Price's office notes for both the November 1989 and January 1990 visits are routine and make no mention of disability or of the plaintiff stopping work.

In February of 1990, the plaintiff applied for unemployment benefits. In the application, he indicated the reason he left Riverside was "permanent layoff—reduction in force."

After January 30, 1990, the next time the plaintiff was seen by Dr. Price was April 30, 1990. The plaintiff had been experiencing increasing shortness of breath and chest pain. Dr. Price then had plaintiff undergo a treadmill thallium stress test, the results of which were abnormal. In May of 1990, after the plaintiff underwent additional testing, Dr. Price diagnosed the plaintiff as suffering from angina with coronary artery disease associated with diabetes mellitus. Dr. Price advised the plaintiff to stop looking for work and to file for disability benefits with the Social Security Administration.

The plaintiff was initially denied disability benefits by the Social Security Administration. On January 25, 1991, however, an Administrative Law Judge ("ALJ") granted benefits to the plaintiff and found that the plaintiff had been disabled as of May 5, 1990, the date the plaintiff alleged was the onset date. The ALJ believed that the plaintiff stopped work on that date due to his impairments and as of that time was no longer able to work. The plaintiff subsequently requested that the ALJ reconsider the onset date, and the ALJ amended the decision and determined that the plaintiff was disabled as of December 29, 1989. Although the plaintiff claims that the reason for the change was that the ALJ was told of the plaintiff's November 1989 emergency room visit, the ALJ on two occasions states that the onset date was changed based on the ALJ's belief that the plaintiff last worked on December 29, 1989, and that the reason the plaintiff stopped working was because of his heart condition.[1] There is no indication that the ALJ was aware that plaintiff was terminated as part of a reduction in force or that plaintiff had received unemployment compensation for part of the same period for which he was to receive disability compensation.

In the spring of 1991, plaintiff began communicating with the defendant about applying for disability benefits under the group insurance policy issued to Riverside. The plaintiff's application was filed in June of 1991, at which point the defendant requested additional information. Over the course of the next year, plaintiff submitted additional information as was requested by the defendant on a number of occasions. At each stage, as the plaintiff supplied additional information, the defendant denied the plaintiff's request for benefits.

In support of his application for benefits, plaintiff submitted letters from Dr. Price. In August of 1991, Dr. Price wrote that the plaintiff did well after his 1982 artery bypass, but in 1989 began experiencing "pain which eventually was found to be progressive angina" and that the onset of the angina "developed in a more insidious manner in the last half of 1989, which resulted in his positive treadmill thallium test in April of 1990 and

1. The ALJ stated that plaintiff's attorney requested that the onset date "be amended to December 29, 1989, the date the claimant last worked. He stated the claimant ... last worked on December 29, 1989, because of his heart condition." Later, under the section entitled "Findings," the ALJ stated that plaintiff "met the disability insured status requirements of the Act on December 29, 1989, the date the claimant stated he became unable to work."

then to the rather severe findings on his repeat coronary arteriography on May 17, 1990." In October of 1991, Dr. Price wrote that the plaintiff's condition was latent for several years, that "the onset was insidious," and that his "current disability ... has been developing over the past several years and became overt in the fall of 1989 and was found specifically in November of 1989." Finally, in May of 1992, Dr. Price stated that "by sheer grit and determination in the past two to three years, [plaintiff] has been able to tolerate his symptoms and I also believe that in 1989 his symptoms became much more severe and ... he became disabled and unable to function at his work prior to the date of November 1989."

The plaintiff initiated suit pursuant to 29 U.S.C. § 1132 after the defendant continued to deny his requests for benefits, claiming that the denial of benefits was in violation of ERISA. As indicated, the court presently has cross-motions for summary judgment.

## II. *DISCUSSION*

Summary judgment will be granted when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). The record is viewed in the light most favorable to the nonmoving party. *Marshall v. UNUM Life Ins. Co.,* 13 F.3d 282, 283 (8th Cir.1994). The nonmoving party must present specific facts showing the existence of a genuine issue of material fact for trial. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 256, 106 S.Ct. 2505, 2514, 91 L.Ed.2d 202 (1986).

The parties are in agreement that this court conducts a *de novo* review of the plan administrator's decision to deny long-term disability benefits. *See Firestone Tire & Rubber Co. v. Bruch,* 489 U.S. 101, 110–15, 109 S.Ct. 948, 954–56, 103 L.Ed.2d 80 (1989) (where plan does not specifically grant plan administrator discretion to determine eligibility, court undertakes a *de novo* review of the record); *Davidson v. Prudential Ins. Co. of Am.,* 953 F.2d 1093, 1095 (8th Cir.1992); *Brewer v. Lincoln Nat'l Life Ins. Co.,* 921 F.2d 150, 153–54 (8th Cir.1990), *cert. denied,*

501 U.S. 1238, 111 S.Ct. 2872, 115 L.Ed.2d 1038 (1991).

▇▇▇ The issue before the court is whether the plaintiff was disabled, as defined by the plan, on his last day of work, December 29, 1989.[2] According to the plan, a person is disabled if that person is:

> unable to perform all of the material and substantial duties of his occupation on a full-time basis because of a disability:
>
> a. caused by injury or sickness;
>
> b. that started while insured under this policy.

In construing this provision, the court is cognizant that the plan is written so as to be understood by laypersons and that the terms should be accorded their ordinary meanings. *See* 29 U.S.C. § 1022(a)(1); *Brewer,* 921 F.2d at 154 (reasoning that terms in ERISA plans are "specifically written for and targeted toward laypersons" and should be given their ordinary meanings); *Burnham v. Guardian Life Ins. Co. of Am.,* 873 F.2d 486, 489 (1st Cir.1989) ("[S]traightforward language in an ERISA-regulated insurance policy should be given its natural meaning."). The plain language of the policy shows that a disability must start while a person is insured; it is not sufficient simply for the injury or sickness to have begun while a person is insured.

A case factually similar to that before the court is *De Coninck v. Provident Life and Accident Ins. Co.,* 747 F.Supp. 627 (D.Kan. 1990). The claimant was terminated from his job and subsequently sought disability benefits under an ERISA group health plan, alleging that he was disabled on his last day of work. In reviewing the plan administrator's decision *de novo,* the court observed that although the claimant received medical treatment and made hospital visits before being terminated, there had been no restrictions placed on the claimant's work activities. *Id.* at 631–32. In addition, while a doctor later said the claimant had become disabled prior to termination, medical notes from that time made no mention of significant disabilities and the claimant's activities were unrestricted. *Id.* at 631. The court also had

---

**2.** The parties are in agreement that the critical date is the last day the plaintiff worked. According-

ing to the plan, "[a]n employee will cease to be insured ... the date employment terminates."

before it a finding of disability under the Social Security Act. The court concluded that although the claimant may later have become disabled, there was unsatisfactory proof that the claimant was disabled when he was terminated, as required under the policy, and granted summary judgment in favor of the defendant. *Id.* at 632.

The Eighth Circuit recently affirmed a grant of summary judgment in favor of the defendant in a similar case. *See Cox v. Mid–America Dairymen, Inc.,* 13 F.3d 272 (8th Cir.1993). While the deferential standard called for by the circumstances in *Cox* render that case not determinative here, it is instructive nevertheless. The claimant Cox had a heart attack, underwent angioplasty, returned to work and continued working for one and one-half years until there was a plant closing and he was laid off. *Id.* at 273. Cox unsuccessfully attempted to transfer within the company after the plant closing and for some period continued to look for other work. He later claimed that he was disabled when he left work, and an ALJ agreed with him in granting Social Security benefits. *Id.* While the claimant was still working, his doctor's notes indicated the claimant was doing relatively well, could resume normal activities with some restrictions, and was stable. The doctor later stated that the claimant was disabled at the time he was laid off. *Id.* at 274. The district court, applying a deferential standard of review to the plan administrator's decision, granted summary judgment in favor of the defendant. In affirming the district court's decision, the Eighth Circuit observed that the doctor's opinion was inconsistent, the claimant worked until the plant closing, he continued to seek employment after the plant closing, and the doctor had not significantly limited the claimant's activities prior to the plant closing. *Id.* at 275; *see also Bolling v. Eli Lilly and Co.,* 990 F.2d 1028 (8th Cir. 1993).

The defendant in the present case similarly argues that it is entitled to a grant of summary judgment. In reviewing the entire record in the light most favorable to the plaintiff, the court concludes that the plaintiff has not presented evidence that he met the plan's definition of disability on his last day of work. The plaintiff does not deny that he was working until one week prior to the company-wide lay off, when he took his vacation. The plaintiff does not allege that he was unable to perform "the material and substantial duties of his occupation." Rather, he seems to argue that he was ill, and that although he did not know the extent of his illness he should not have been working and thus he was disabled. While it is possible that a person may be suffering from a disability that has not been diagnosed prior to the termination of insurance coverage, *see Bruce v. K–Mart Corp.,* 568 F.Supp. 378, 382–83 (W.D.Ark.1983), such is not the case here.

The medical evidence does not support the plaintiff's claim that he had become disabled and hence was unable to "perform the material and substantial duties of his occupation" prior to his termination. He visited his doctor in late November of 1989 and late January of 1990, and on neither of those times did the doctor restrict his activities. Although his doctor later stated that the plaintiff was disabled by November of 1989, the doctor is not in a position to determine the plaintiff's disability as defined by the insurance policy issued by the defendant; indeed, Dr. Price stated in May of 1992 that the plaintiff's "disabling illness began in my opinion, in June of 1982 when his coronary artery disease became so severe that he required a coronary artery bypass." Surely it would be inappropriate to deem the plaintiff disabled as of 1982, when he continued working and performing the "material and substantial duties of his occupation" through 1989.[3]

3. In addition, by seeking unemployment benefits and representing that he no longer worked at Riverside because of a lay-off, the plaintiff indicated that he believed that he was able to work. A claimant's state of mind is not necessarily determinative, however, on the issue of whether he or she was disabled under a specific policy. *Cf. Lackey v. Celebrezze,* 349 F.2d 76, 79 (4th Cir.1965) (reasoning that "receipt of unemployment compensation does not in itself prove ability to work"). In this particular case, there is no indication that the plaintiff returned the unemployment compensation he received which overlaps with the Social Security disability payments he received. What, if anything, this may indicate

This court is not holding that simply because the plaintiff showed up for work, he cannot be considered disabled under the relevant policy. There certainly may be situations where a person still goes to work but is considered disabled under the applicable insurance policy. *See Ballard v. Northwestern Nat'l Life Ins. Co.*, 931 F.2d 513, 515 (8th Cir.1991) (claimant stopped working in April of 1981, but was considered totally and permanently disabled under the insurance policy as of October of 1980). This case does not, however, involve such a situation. *See Reeser v. Esmark, Inc., Pension Bd.*, 714 F.Supp. 412, 413–14 (S.D.Iowa 1989) (although plaintiffs had partial disabilities, they stopped working because of plant closure, not because of disabilities); *see also Brotherhood of R.R. Trainmen v. Drake*, 204 Ark. 964, 165 S.W.2d 947, 949 (1942) ("It is difficult to understand how a man can be totally and permanently disabled, and yet perform all the material and substantial duties of his work."); *Aetna Life Ins. Co. v. Person*, 188 Ark. 864, 67 S.W.2d 1007, 1010 (1934).

The plaintiff further argues that this court should consider the ALJ's finding, for Social Security purposes, that he became disabled on December 29, 1989. ERISA plans are not bound by Social Security determinations, and this court owes no deference to findings made under the Social Security Act. *See Anderson v. Operative Plasterers' and Cement Masons' Int'l Ass'n Local No. 12 Pension and Welfare Plans*, 991 F.2d 356, 358–59 (7th Cir.1993); *Madden v. ITT Long Term Disability Plan for Salaried Employees*, 914 F.2d 1279, 1286 (9th Cir.1990), *cert. denied*, 498 U.S. 1087, 111 S.Ct. 964, 112 L.Ed.2d 1051 (1991). This is particularly true in the present case where the ALJ, in changing the onset date to coincide with the plaintiff's last day of work, appears to have been under the mistaken belief that the plaintiff stopped working because of his heart condition and was unaware that the plaintiff was terminated as part of a reduction in force.

Viewing the evidence in the light most favorable to the plaintiff, the court concludes that the defendant is entitled to summary judgment. The critical issue is whether the plaintiff was able to perform the material and substantial duties of his occupation. The evidence shows that the plaintiff saw his doctor every few months and went to a hospital emergency room, but the plaintiff continued to work until he was terminated. Prior to his termination, the plaintiff's doctor did not limit his activities and the doctor's notes did not indicate any significant changes in the plaintiff's condition in November of 1989 or January of 1990. The evidence shows that the plaintiff was capable of performing his duties and continued to do so until terminated. Hence, the defendant is entitled to summary judgment.[4]

The plaintiff's motion for summary judgment requires the court to view the evidence in the light most favorable to the defendant. Considering the court's determination that the defendant prevails even when the evidence is viewed in the plaintiff's favor, viewing the evidence in the defendant's favor only further supports the defendant's position and weakens the plaintiff's position. The plaintiff has not presented evidence that would allow him to prevail on a motion for summary judgment, regardless of whether the evidence is viewed in the light most favorable to the plaintiff or the defendant.

Pursuant to this Memorandum Opinion, let judgment be entered overruling plaintiff's motion for summary judgment. Let judgment be entered granting defendant's motion for summary judgment and prayers for other appropriate relief.

## JUDGMENT

Pursuant to Memorandum Opinion this day filed herein which Memorandum Opinion

about claimant's state of mind need not be decided here.

4. Although the defendant raised in its brief for summary judgment the issues of failure to exhaust administrative remedies and lack of timeliness of notice of disability, it apparently abandoned these grounds and did not address them at the summary judgment hearing or in its post-hearing briefs. In light of the court's decision in favor of the defendant, however, it is not necessary to address either of these issues.

contains the requisite findings of fact and conclusions of law,

IT IS CONSIDERED, ORDERED, ADJUDGED AND DECREED that the Motion of plaintiff Marion Ciulla for Summary Judgment be, and the same hereby is, overruled and plaintiff's prayers for relief in this cause are summarily denied.

IT IS FURTHER CONSIDERED, ORDERED, ADJUDGED AND DECREED that the Motion of defendant USAble Life for Summary Judgment be, and the same hereby is, granted and the complaint of plaintiff Marion Ciulla hereby is dismissed with prejudice at cost of plaintiff.