Michael DOWNEY, Plaintiff,

v.

HARTFORD LIFE GROUP
INSURANCE COMPANY,
Defendant.

Case No. 08–4303–CV–C–SOW.

United States District Court,
W.D. Missouri,
Central Division.

Feb. 16, 2010.

**1084**

Frank T. Koch, Harlan, Harlan & Still, Columbia, MO, for Plaintiff.

Dione C. Greene, Armstrong Teasdale LLP, Kansas City, MO, Patrick J. Kenny, Armstrong Teasdale, LLP, St. Louis, MO, for Defendant.

## ORDER

SCOTT O. WRIGHT, Senior District Judge.

Before the Court are plaintiff Michael Downey's Motion for Summary Judgment (Doc. # 19) and defendant Hartford Life Group Insurance Company's Motion for Summary Judgment (Doc. # 17), as well as corresponding Suggestions in Opposition and Replies.

### I. *Background*

Plaintiff Michael Downey brought this action against defendant Hartford Life Group Insurance Company ("Hartford") pursuant to the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1132, in order for the Court to review the denial of plaintiff's claim for long term disability benefits under an ERISA-governed employee welfare benefit plan. Both parties have moved for summary judgment and the material facts are undisputed.

Plaintiff worked for Scholastic, Inc. as an Order Clerk. Hartford is both the administrator, who determines employee eligibility, and the insurer, who pays the benefits, of Scholastic, Inc.'s disability insurance policy. It is undisputed that ERISA governs the employee benefit plan. The plan includes two definitions of disability. Initially, an individual is deemed disabled and may receive benefits for 24 months if "during the elimination period and following 24 months" he is "continually unable to perform the material and substantial duties of [his] regular occupation and [is] not gainfully employed" (the "own occupation" standard). Thereafter, an individual is deemed disabled and may receive long term monthly benefits if he is "continuously unable to engage in any occupation for which [he is or becomes] qualified by education, training or experience, and [is] not gainfully employed" (the "any occupation" standard).

Plaintiff submitted a claim for long term disability benefits in June and July of 2006 based upon pain that followed back surgery.[1] At Hartford's request, plaintiff's back surgeon, Dr. Curtis Cox, provided an opinion on plaintiff's disability. According to Dr. Cox, plaintiff's primary diagnosis was lumbar spondylosis and post-laminectomy syndrome and a secondary diagnosis was peripheral neuropathy. He believed plaintiff could not stand, walk, or sit for over 30 minutes at a time, could not lift or carry over 10 pounds, and could not reach overhead, push or pull without significant pain. He believed these restrictions would last perhaps up to one year.

Hartford reviewed plaintiff's claim and determined that he met the definition of disabled under the "own occupation" standard—that is, he was unable to perform the material and substantial duties of his own job—and began paying him benefits on August 19, 2006, after the "Elimination Period." Hartford paid plaintiff long term

---

**1.** In February of 2006, plaintiff had knee replacement surgery. However, the basis of his claim for long term disability benefits was pain from back surgery.

disability benefits for the full 24 month "own occupation" period under the policy, from August of 2006 through August of 2008.

According to the plan, Hartford will assist a plan participant in applying for and obtaining Social Security Disability Awards. Here, Hartford referred plaintiff to a law firm for the purpose of obtaining Social Security disability benefits. However, this firm did not represent plaintiff; he used a certified non-attorney representative. In March of 2007, the Social Security Administration determined that plaintiff was disabled under its rules and began paying him monthly Social Security disability benefits. This award reduced the monthly disability benefits Hartford paid plaintiff.

Hartford monitored plaintiff's condition throughout the 24 month period by obtaining opinions from plaintiff's treating physicians, Dr. Cox and Dr. Lucio, inquiring whether plaintiff could work subject to any restrictions or limitations. By September of 2006, Dr. Cox opined that plaintiff's limitations would last "perhaps the balance of his life." These limitations included inability to stand, walk, or sit for over 30 minutes; requiring a cane for ambulation; inability to lift or carry over 10 pounds; and inability to sit long because of severe pain. Dr. Cox had essentially the same opinion in February of 2007. In August of 2007, he again opined that the limitations were "indefinite," making plaintiff "unable to return to work in the foreseeable future." He believed plaintiff's work restrictions included inability "to walk, stand or sit for over 20–30 minutes at a time[, or] to ambulate unaided and therefore unable to return to gainful employment because of need of a cane and potent narcotic and other meds."

Plaintiff saw Dr. John Lucio, a specialist in chronic pain medicine, for pain management. Dr. Lucio also prescribed plaintiff several pain medications and had diagnosed plaintiff with failed back syndrome and exacerbation. In August of 2007, Dr. Lucio believed plaintiff's work restrictions included no lifting over 20 pounds and avoiding repeated bending. He believed these limitations were indefinite. Later in April of 2008, Dr. Lucio agreed to Hartford's inquiry of whether plaintiff "[could exert] 1–20 pounds of force occasionally and/or up to 10 pounds of force frequently and/or a negligible amount of force constantly to move objects; [walk] or [stand] to a significant degree (frequently) or requires sitting most of the time but entails pushing and/or pulling of arm or leg controls and/or when the job requires [work] at a production rate pace entailing the constant pushing or pulling of materials even though the weight of those materials is negligible."

In April of 2008, Hartford consulted with a Rehabilitation Clinical Case Manager to perform an employability analysis, who used the restrictions and limitations enumerated by Dr. Lucio to conclude that plaintiff possessed the skills required to perform seven different "sedentary to light occupations" in his field. Hartford concluded that plaintiff did not meet the definition for disability under the "any occupation" standard and decided to terminate benefits as of August 19, 2008.

Plaintiff was notified of the decision in a letter dated May 8, 2008. In the letter, Hartford stated that plaintiff "[was] able to frequently lift and carry up to 10 pounds, occasionally lift and carry up to 20 pounds and/or a negligible amount of force constantly, ... able to walk or stand to a significant degree; to sit most of the time but entails pushing and/or pulling of arms or leg controls; to work at a production rate pace entailing the constant pushing and/or pulling of materials even though the weight of those materials is negligible;

and no repeated bending." On May 17, 2008, plaintiff appealed the decision to discontinue benefits, urging Hartford to rely on Dr. Cox and to discount Dr. Lucio. After plaintiff appealed, Hartford obtained updated medical records on plaintiff. In June of 2008, Dr. Cox noted that plaintiff was still disabled and unemployable, and had the following impairments: "standing longer than 30 minutes increases pain and requires sitting or reclining; [w]alking severely limited and requires use of assistive devices; [p]rolonged sitting (over 30 minutes) is intolerable;" and plaintiff could not lift, carry, reach or work overhead without severe pain. Again, he stated these were indefinite.

In July of 2008, Hartford sought an independent medical review of plaintiff's claim by Dr. Deepak Awasthi, board certified in neurology, and provided him with the entire record. Dr. Awasthi reviewed the record, including all of plaintiff's medical records, and spoke with plaintiff's treating physicians. Dr. Cox opined that plaintiff could not work at all due to severe and disabling pain. Dr. Lucio, however, opined that although plaintiff was essentially disabled, he could probably do sedentary work. After review, Dr. Awasthi confirmed that plaintiff had chronic low back pain that interfered with activities of daily life. Finding the restrictions given by Dr. Cox to be too excessive, he believed plaintiff's restrictions included "no lifting, pulling, pushing greater than 40 pounds, avoiding prolonged periods (greater than two hours) of sitting, standing, walking," but that plaintiff "[could] lift up to 20 pounds occasionally and up to 10 pounds frequently." He also believed there were no restrictions and limitations based solely upon medications, as there were no documented abnormal side effects. Ultimately, Dr. Awasthi concluded that although plaintiff had limitations, he "was neurologically intact and he should be able to perform sedentary full time work."

Thereafter, Hartford performed a second employability analysis, taking into account Dr. Awasthi's restrictions and limitations. Again, a Rehabilitation Clinical Case Manager concluded that plaintiff could work, identifying at least four different sedentary occupations for which plaintiff had transferrable skills. In August of 2008, Hartford reviewed the second employability analysis, all information and records obtained from plaintiff, the medical records and opinions of Drs. Cox, Lucio, and Awasthi, and concluded that its decision to deny long term disability benefits under the "any occupation" standard was proper. It denied plaintiff's appeal.

## II. *Standard*

A motion for summary judgment should be granted if, viewing the evidence in the light most favorable to the non-moving party, there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R.Civ.P. 56(c); *Rafos v. Outboard Marine Corp.*, 1 F.3d 707, 708 (8th Cir.1993) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)). The moving party bears the burden of presenting sufficient evidence to establish that there are no genuine issues of material fact for trial and that the movant is entitled to summary judgment as a matter of law. *Celotex*, 477 U.S. at 322, 106 S.Ct. 2548. A party opposing a properly supported motion for summary judgment may not rest upon the allegations contained in the pleadings, "but must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). In reviewing a motion for summary judgment, the Court must scrutinize the evidence in the light most favorable to the non-moving party, according the non-moving party the benefit of every factual inference and resolving any

doubts as to the facts or existence of any material fact against the moving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158–59, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970).

■ Pursuant to section 1132 of ERISA, a Court may review a decision to deny benefits. 29 U.S.C. § 1132(a)(1)(B). "[A] denial of benefits challenged under § 1132(a)(1)(B) is to be reviewed under a *de novo* standard unless the benefit plan gives the administrator ... discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989). Therefore, when the administrator has discretionary authority, as does defendant here, a denial of benefits is reviewed under a deferential "abuse of discretion" standard. *McGee v. Reliance Standard Life Ins. Co.*, 360 F.3d 921, 924 (8th Cir.2004).

The appropriate inquiry under this deferential standard "is whether the plan administrator's decision was reasonable; i.e. supported by substantial evidence." *Cash v. Wal–Mart Group Health Plan*, 107 F.3d 637, 641 (8th Cir.1997) (internal quotations and citation omitted). "While the word 'reasonable' possesses numerous connotations," it does not allow the Court to reject the discretionary decision simply because it disagrees with the decision. *Id.* Furthermore, substantial evidence "means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Consol. Edison Co. of N.Y. v. N.L.R.B.*, 305 U.S. 197, 229, 59 S.Ct. 206, 83 L.Ed. 126 (1938). "If substantial evidence supports the decision, it should not be disturbed even if a different, reasonable interpretation could have been made." *McGee*, 360 F.3d at 924. Therefore, the Court must "examine only the evidence that was before the administrator when the decision was made" and affirm that

decision if "a reasonable person could have—not would have—reached a similar decision." *Wakkinen v. UNUM Life Ins. Co. of Am.*, 531 F.3d 575, 583 (8th Cir. 2008).

### III. *Discussion*

Plaintiff alleges that Hartford's denial of benefits was an abuse of discretion because Hartford (a) had a conflict of interest, (b) did not consider that plaintiff was approved for Social Security disability benefits, (c) relied on the opinion of a peer review physician who discounted the opinion of plaintiff's treating physician based upon inadequate rationale and (d) did not consider the effect of plaintiff's pain medication. Hartford contends that its decision was supported by substantial evidence in the administrative record and therefore was reasonable and not an abuse of discretion.

### A. *Conflict of Interest*

■ Plaintiff correctly notes that because Hartford, the insurance company who issued the policy to plaintiff's employer, was also the plan administrator, there was a conflict of interest. *Metro. Life Ins. Co. v. Glenn*, 554 U.S. 105, 128 S.Ct. 2343, 2348, 171 L.Ed.2d 299 (2008) (holding that when an insurance company, as the plan administrator, both determines eligibility for benefits and pays benefits claims, it creates a conflict of interest). When "a benefit plan gives discretion to an administrator or fiduciary who is operating under a conflict of interest, that conflict must be weighed as a 'facto[r]' in determining whether there is an abuse of discretion.'" *Firestone*, 489 U.S. at 115, 109 S.Ct. 948. Therefore, "when judges review the lawfulness of benefit denials, they will often take account of several different considerations of which a conflict of interest is *one.*" *Glenn*, 128 S.Ct. at 2351 (emphasis added). Even when a "conflict" exists, the abuse of

discretion standard is still applied. *Id.* at 2350.

"[T]he significance of the factor will depend upon the circumstances of the particular case." *Id.* at 2346. The Supreme Court noted that "[t]he conflict of interest at issue ... should prove more important (perhaps of great importance) where circumstances suggest a higher likelihood that it affected the benefits decision, including, but not limited to, cases where an insurance company administrator has a history of biased claims administration." *Id.* at 2351. "It should prove less important (perhaps to the vanishing point) where the administrator has taken active steps to reduce potential bias and to promote accuracy, for example, by walling off claims administrators from those interested in firm finances, or by imposing management checks that penalize inaccurate decisionmaking irrespective of whom the inaccuracy benefits." *Id.*

Plaintiff has offered no evidence suggesting a history of biased claims administration by Hartford or other evidence suggesting that the conflict affected Hartford's decision. Hartford has, however, offered evidence demonstrating an effort to ensure accurate claims assessments. For example, a person reviewing a claimant's appeal has no contact with Hartford's financial department and receives no award for denying claims. The court acknowledges that a technical conflict of interest exists here, and will consider it as one factor in determining whether Hartford abused its discretion, keeping in mind Hartford's procedural safeguards.

## B. Social Security Disability Benefits

Plaintiff claims the conflict of interest is amplified by the fact that Hartford abused its discretion by ignoring the Social Security Administration's findings.

Plaintiff equates the facts of this case to those in *Metropolitan Life Insurance Company v. Glenn,* where the insurance company "encouraged [the claimant] to argue to the Social Security Administration that she could do no work, received the bulk of the benefits of her success in doing so ..., and then ignored the agency's finding in concluding that she could ... work." *Id.* at 2352. In *Glenn,* this fact was important, suggesting procedural unreasonableness, and would have justified giving more weight to the conflict of interest, because the insurer's inconsistent positions were financially advantageous. *Id.* This, taken together with the fact that the insurer had emphasized a certain medical report that favored a denial of benefits, had de-emphasized certain other reports that suggested a contrary conclusion, and had failed to provide its independent experts with all of the evidence, led the lower court to set aside the insurer's decision. *Id.*

Plaintiff claims that here, Hartford actively assisted him by encouraging him to apply for social security benefits and encouraging him to a certain law firm, that his subsequent receipt of such benefits reduced Hartford's monthly liability, and that Hartford did not factor this into its decisionmaking process despite the fact that the Social Security Administration's definition of disability is more strict than its own. Plaintiff claims that Hartford therefore abused its discretion in denying benefits as had the insurer in *Glenn.*

However, it does not appear that Hartford acted like the insurer in *Glenn* such that its behavior evidences an abuse of discretion. For example, in *Glenn,* the insurer did not give all relevant information to its independent reviewer. 128 S.Ct. at 2352. Here, Hartford provided Dr. Awasthi with the entire record. In *Glenn,* the insurer emphasized a certain medical report that favored a denial of benefits and de-emphasized certain other reports that suggested a contrary conclusion. *Id.*

Here, Hartford relied on two of three physicians who concurred that plaintiff could work. Although it would be an abuse of discretion had Hartford simply seized upon negative information and ignored relevant evidence suggesting disability, *Norris v. Citibank, N.A. Disability Plan*, 308 F.3d 880, 885 (8th Cir.2002), the Court does not find that Hartford did so here.

The medical record before the Social Security Administration when it determined plaintiff was disabled was not the same record before Hartford over a year later when it determined that plaintiff was not disabled under the policy's "any occupation" standard. Instead, Hartford based its decision on updated records and assessments performed *after* the agency's determination. For example, neither Dr. Lucio's opinion that plaintiff could work, nor the employability analyses, were ever before the agency. Furthermore, the Court is not certain that the agency would still reach the same decision had it reviewed the same record that was before Hartford. *See Jackson v. Metro. Life Ins. Co.*, 303 F.3d 884, 889–90 (8th Cir.2002) (rejecting plaintiff's argument that the Social Security Administration's determination that plaintiff was disabled proved that the insurer's contrary decision was unreasonable, because a plan administrator is not bound by a SSA determination, the record reviewed by the SSA was not the same as before the insurer years later, and "[it was] not certain that the SSA still would have concluded that [plaintiff] was entitled to disability benefits had it reviewed the same record that was before [the insurer]"). Moreover, Hartford is not bound by the decisions of the Social Security Administration. *Coker v. Metro. Life Ins. Co.*, 281 F.3d 793, 798 (8th Cir.2002) ("The determination that [plaintiff] suffers from a pain-based disability under Social Security regulations does not require MetLife to reach the same conclusion.") (citing *Ciulla v. Usable Life*, 864 F.Supp. 883, 888

(W.D.Ark.1994) ("ERISA plans are not bound by Social Security determinations, and this court owes no deference to [such] findings.")).

It appears that Hartford was aware of the Social Security Administration's finding that plaintiff was disabled, although it did not specifically acknowledge that conclusion when discussing the basis for its denial of benefits. Accordingly, the Court will consider this as one factor in whether Hartford abused its discretion, keeping in mind that the agency did not review the same updated record that was before Hartford. Furthermore, the Court does not find that this amplifies the conflict of interest, as plaintiff suggests, because the plan requires that Hartford assist plan participants in applying for and securing social security benefits.

### C. Opinion of Peer Review Physician

Plaintiff next claims that Hartford abused its discretion by relying on the opinion of Dr. Awasthi, who ignored key findings and mischaracterized the medical evidence. Specifically, plaintiff argues that Dr. Awasthi's finding that plaintiff was "neurologically intact" was contradicted; that Dr. Awasthi failed to discuss that plaintiff had undergone knee replacement surgery or that plaintiff used a cane; and that any support for Dr. Awasthi by Dr. Lucio was "not very strong." Although Hartford is entitled to seek and obtain a professional peer review opinion, plaintiff argues, "it [is] not free to accept this report without considering whether its conclusions follow logically from the underlying medical evidence." *Willcox v. Liberty Life Assurance Co. of Boston*, 552 F.3d 693, 700–01 (8th Cir.2009) (citation and internal quotations omitted).

Plaintiff claims that Dr. Lucio's statements regarding plaintiff's neurological functioning and Dr. Cox's repeated finding

that plaintiff suffered from "peripheral neuropathy" contradict Dr. Awasthi's conclusion that plaintiff was "neurologically intact." Hartford disputes plaintiff's characterization of Dr. Awasthi's statement as meaning "symptom free." The record shows that Dr. Awasthi reviewed the doctor's findings and even referenced Dr. Cox's examination of peripheral neuropathy in his report. It does not appear that Dr. Awasthi disregarded Dr. Cox's or Dr. Lucio's findings in this regard to arrive at a contrary conclusion.

■ Plaintiff discounts Dr. Awasthi because he did not actually examine plaintiff. A plan administrator does not abuse its discretion by "credit[ing] a peer reviewer's analysis over a primary care physician's conclusions because the peer reviewer did not physically examine the claimant." *Midgett v. Wash. Group Int'l Long Term Disability Plan,* 561 F.3d 887, 897 (8th Cir.2009) (citing *Dillard's Inc. v. Liberty Life Assurance Co. of Boston,* 456 F.3d 894, 899–900 (8th Cir.2006) ("[w]e have held ... that a plan administrator has discretion to deny benefits based upon its acceptance of the opinions of reviewing physicians over the conflicting opinions of the claimant's treating physicians unless the record does not support the denial")).

Furthermore, the Court does not find that Dr. Awasthi mischaracterized evidence or ignored key findings simply because he did not discuss knee replacement surgery or a cane. He reviewed the entire record, including records documenting plaintiff's previous knee surgery and use of a cane, and personally spoke with Dr. Cox and Dr. Lucio. Both of plaintiff's physicians were aware he used a cane when they determined his restrictions and limitations in working before expressing them to Dr. Awasthi. Moreover, knee surgery was not a basis for plaintiff seeking disability benefits.

Finally, plaintiff attempts to discount Dr. Lucio's opinion, on which Dr. Awasthi and Hartford both relied, claiming it is not definitive and is contradicted by other evidence. However, plaintiff has not convinced the Court that Dr. Lucio should be discredited. Plaintiff also emphasizes Dr. Cox's opinion, implying that it was arbitrarily disregarded by Hartford because he "changed his opinion." The Court disagrees. Although Hartford mentioned that Dr. Cox changed his opinion, there is no evidence that it completely disregarded it because of this. As a plan administrator, Hartford is not permitted to "arbitrarily refuse to credit a claimant's reliable evidence, including the opinions of a treating physician." *Id.* at 897. However, Hartford was not required to give "special deference to the opinions of [a claimant's] physicians," nor was it required to explain "when [it] credit[ed] reliable evidence that conflict[ed] with a treating physician's evaluation." *Black & Decker Disability Plan v. Nord,* 538 U.S. 822, 831, 834, 123 S.Ct. 1965, 155 L.Ed.2d 1034 (2003). Therefore, Hartford was not required to defer to Dr. Cox's opinion or to discount Dr. Lucio or Dr. Awasthi where they contradicted Dr. Cox.

Plaintiff has not shown that Dr. Awasthi's report was inaccurate or that he mischaracterized evidence, and therefore Hartford's reliance on it was not an abuse of discretion. Moreover, Hartford did not rely exclusively on Dr. Awasthi in making its decision.

### D. Effect of Pain Medication

Lastly, plaintiff claims that Hartford abused its discretion by failing to consider the side effects of his medications. The record indicates that plaintiff was taking several narcotic pain medications. Dr. Cox believed these impaired plaintiff's ability to return to work. However, Dr. Lu-

cio, the physician who prescribed the medications, did not list this as a limitation or restriction to plaintiff's ability to work. Dr. Awasthi said plaintiff suffered no "abnormal side effects" from the medications that would limit him from working. The record shows that Hartford reviewed the entire record before it, including the position of each doctor on pain medications. Consequently, the Court does not find that Hartford ignored the effects of plaintiff's pain medications.

### E. Hartford's Decision Not an Abuse of Discretion

Even though plaintiff's reading of the record could lead to a contrary conclusion, it does not mean that Hartford erred, as its decision was still supported by *substantial* evidence. See *Midgett*, 561 F.3d at 897 ("Provided the decision is supported by a reasonable explanation, it should not be disturbed, even though a different reasonable interpretation could have been made.") (internal quotations and citation omitted). Here, one doctor, Dr. Cox, believed plaintiff could not work based on pain. However, Hartford's decision that plaintiff was able to work was consistent with Dr. Lucio, one of plaintiff's treating physicians, as well as Dr. Awasthi, an independent physician who reviewed plaintiff's claim. Although the Social Security Administration found that plaintiff was disabled, there was sufficient evidence to support Hartford's contrary decision over a year later, much of which was never before the agency's consideration. Finally, although there was a technical conflict of interest, it does not appear Hartford was motivated by it in denying benefits.

Hartford reviewed and based its decision on the entire record. The Court finds that a reasonable person could have reached a similar decision based on the evidence before Hartford. Consequently, the Court finds that Hartford's denial of long term disability benefits was reasonable and supported by substantial evidence, and therefore, was not an abuse of discretion.

### IV. Conclusion

Accordingly, based on the above discussion, it is hereby

ORDERED that plaintiff Michael Downey's Motion for Summary Judgment (Doc. # 19) is denied. It is further

ORDERED that defendant Hartford Life Group Insurance Company's Motion for Summary Judgment (Doc. # 17) is granted. It is further

ORDERED that the Clerk of the Court shall enter final judgment at this time.