UNITED STATES COURT OF APPEALS

FOR THE FOURTH CIRCUIT

No. 99-2252
(CA-98-308-7)

Linda J. Myers,

Plaintiff - Appellant,

versus

Hercules, Incorporated, et al.,

Defendants - Appellees.

O R D E R

The court amends its opinion filed June 8, 2001, as follows:

On page 10, second full paragraph, line 1 -- the word "Finally" is changed to read "Fourth."

For the Court - By Direction

/s/ Patricia S. Connor
Clerk

PUBLISHED

UNITED STATES COURT OF APPEALS

FOR THE FOURTH CIRCUIT

LINDA J. MYERS,
Plaintiff-Appellant,

v.

No. 99-2252

HERCULES, INCORPORATED; PROVIDENT
LIFE & ACCIDENT INSURANCE
COMPANY,
Defendants-Appellees.

Appeal from the United States District Court
for the Western District of Virginia, at Roanoke.
Samuel G. Wilson, Chief District Judge.
(CA-98-308-7)

Argued: January 25, 2001

Decided: June 8, 2001

Before MICHAEL and MOTZ, Circuit Judges, and
Robert E. PAYNE, United States District Judge for the
Eastern District of Virginia, sitting by designation.

_____

Reversed by published opinion. Judge Michael wrote the opinion, in
which Judge Motz and Judge Payne joined.

_____

COUNSEL

ARGUED: F. Rodney Fitzpatrick, F. RODNEY FITZPATRICK,
P.C., Roanoke, Virginia, for Appellant. David Edward Constine, III,
MAYS & VALENTINE, L.L.P., Richmond, Virginia, for Appellees.

**ON BRIEF:** Richard F. Hawkins, MAYS & VALENTINE, L.L.P., Richmond, Virginia, for Appellees.

_____

## OPINION

MICHAEL, Circuit Judge:

Because of a debilitating back condition, Linda Myers, an employee of Hercules Incorporated, was awarded long-term disability (LTD) benefits under the company's income protection plan (the Plan). After Myers had received benefits for over seven years, Provident Life and Accident Insurance Company, the claims fiduciary under the Plan, terminated her benefits, deciding that she was no longer disabled. Myers sued Provident and Hercules under ERISA § 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B), alleging that Provident had wrongfully terminated her benefits. After a bench trial the district court concluded that there was sufficient evidence to support Provident's determination that Myers was no longer disabled. As a result, the district court held that Provident did not abuse its discretion in terminating Myers's benefits. After reviewing the record, we conclude that Provident's decision was neither reasoned nor supported by the evidence (all three doctors who examined Myers opined that she remained totally disabled). We therefore reverse.

I.

The facts are settled. Myers worked as a radiology technician for Hercules at an ammunition plant in Radford, Virginia, from 1986 to 1989. In her position Myers performed x-ray and lung capacity examinations, maintained radiology files, and conducted certain laboratory examinations. The physical demands of the job required Myers, among other things, to lift and carry film materials and gallon quantities of chemicals, to pull and push x-ray equipment into position, and to bend or squat in retrieving and storing film files. In addition, Myers regularly carried film files up and down a flight of stairs that led to the basement storage area.

Myers, who was born in 1941, has a long history of severe back trouble. She had surgeries (laminectomies) in 1981 and 1982 to alle-

2

viate the pain. During the three years Myers worked at Hercules, she had three more back surgeries (all laminectomies). After the fifth laminectomy in February 1989 Myers did not return to work at Hercules because she could not handle the physical demands of her job. In October 1989 she applied for LTD benefits under the Hercules Plan. Under the Plan a participant who is "not able to perform [her] job" is "considered totally disabled" and is eligible for LTD benefits for two years. After this initial two-year period a participant is "considered totally disabled" and entitled to continuing benefits until age 65 if she is "not able to engage in any employment for wage or profit for which [she is] reasonably qualified by training, education, or experience."

In her application for LTD benefits Myers stated that she could not do her job because back pain and lack of strength impaired her ability to walk, change positions (for example, bend or squat), lift objects, and position the x-ray equipment. In support of her application Myers submitted medical reports and opinions from her attending physician, Donald Yoder, M.D., and her neurosurgeon, Harold Young, M.D. Both doctors concluded that Myers's back condition, which was marked by severe pain, rendered her totally disabled from performing any job. Drs. Young and Yoder both noted that Myers could not sit, stand, or walk, or alternate sitting and standing, for even an hour at a time. Finally, the LTD application form asked Myers to list any skills that she had "as a result of prior employment, training, or education." She listed "typing, p.c. operations, operation manuals writing, [and] research technician."

Myers was awarded LTD benefits the same month she applied, October 1989. The following month Myers, as required by the Plan, applied for disability benefits under the Social Security Act. (Her LTD benefits would be reduced by the amount of any Social Security award.) On May 25, 1990, an administrative law judge awarded Myers Social Security disability benefits, concluding that Myers's severe back impairment prevented her from "perform[ing] sustained work activity at any exertional level." In the meantime, in April 1990, Myers had back surgery for a sixth time. This last operation included a lower back arthrodesis procedure (a fusion) and major instrumentation.

3

In 1990, the year following the award of Plan benefits to Myers, Hercules entered into a contract with Provident under which Provident would administer the Plan and provide insurance coverage for disability benefits awarded under the Plan. Hercules, however, remained liable to pay the disability benefits for participants, such as Myers, who became disabled before July 1, 1990. The contract named Provident "Claims Fiduciary" under the Plan. The Plan gives the Claims Fiduciary the following authority with respect to claims decisions:

> The Claims Fiduciary [shall] have the sole and exclusive discretion and power to grant and/or deny any and all claims for benefits, and construe any and all issues relating to eligibility for benefits. All findings, decisions, and/or determinations of any type made by the Claims Fiduciary shall not be disturbed unless the Claims Fiduciary has acted in an arbitrary and/or capricious manner.

Under the Plan, LTD benefits end once a participant is "no longer disabled." Thus, a participant who receives benefits must periodically submit statements of "proof of continuance of disability" to the Claims Fiduciary. Myers submitted these statements, which included reports from Dr. Young, to Provident on a yearly basis. From 1990 through 1993 Dr. Young stated in his reports that while Myers's pain problem was improving, she remained totally disabled from performing any job. In 1994 Dr. Young noted that Myers had some leg pain and numbness and that she could not sit or stand for more than two hours total during a work day. In 1995 Dr. Young reconfirmed that Myers was totally disabled from performing any job. In her 1995 statement Myers said for the first time that her condition allowed her to do "light activities," specifically, to use a stationary exercise bike and swim. In 1996 Dr. Young said once again that Myers was totally disabled. In his diagnosis the doctor noted that Myers had "chronic back pain"; however, in reporting her subjective symptoms, the doctor said that she had "no pain at this time." In describing the extent of Myers's disability, the doctor said that she was completely incapable of lifting, stooping, bending, crawling, and prolonged standing.

The 1996 report from Dr. Young led Provident to reevaluate whether Myers was still totally disabled. In November 1996 Provident

4

sent Myers a rehabilitation survey form. The information Provident sought would assist it in determining whether Myers was an appropriate candidate for the Plan's rehabilitation program, which is aimed at returning eligible participants to the workplace. Myers responded to the rehabilitation survey in March 1997. With respect to her tolerance for physical activity, Myers reported that she could sit or stand for only one hour at a time. She could, however, walk two miles and lift six to ten pounds. According to Myers, she could not return to her old job at Hercules because she was unable to do "the standing, lifting, carrying and reaching [that was] necessary." Indeed, Myers felt that she could not work at any job because "considera[ble] time is needed daily for rest of my back." Moreover, Myers reported that extended activity or overexertion caused pain and numbness in one leg. After receiving the completed survey from Myers, Provident did not suggest rehabilitation.

Provident next arranged for Myers to have an independent medical examination. The examination was conducted by Dr. Kerry Donnelly on April 17, 1997. Dr. Donnelly examined Myers and concluded that she suffered from "[f]ailed back syndrome, with good result from L4 to sacrum anthrodesis, but with persistent pain and functional limitations." Myers was "otherwise in excellent health," according to this doctor. In a form assessing Myers's "physical capacities," Dr. Donnelly noted that in a single eight-hour work day Myers could stand for five hours, walk for six hours, sit for four hours, or drive for four hours. Dr. Donnelly concluded his report as follows:

> It is my opinion that this patient remains disabled from her work as an x-ray technician. She has no other training or education that would enable her to easily perform any type of work outside of this field. I think that given the fact that she has recurrent back and leg symptoms, with prolonged walking, sitting or strenuous activity, that this patient should continue to be considered permanently disabled from this problem.

In the final step of reevaluating Myers's disability, a Provident representative interviewed her over the telephone on May 21, 1997. When the representative called Myers's residence, she answered the phone, "Promoline." Myers explained that Promoline is the name of

5

her husband's business and that she always answers the phone that way. Myers told the representative that she was able to climb stairs and do light housekeeping work, but she said that her activities were limited because of the pain in her back.

Provident terminated Myers's LTD benefits on June 2, 1997. Provident based its decision on the independent medical report of Dr. Donnelly and the annual reports of Dr. Young, her neurosurgeon. The company interpreted Dr. Donnelly's report to mean that Myers is "physically able to work full time" and Dr. Young's reports to mean that Myers is "limited only from significant lifting, stooping, bending, crawling and prolonged standing." Provident concluded that Myers's education, skills, and experience gave her the capability to perform several jobs, such as receptionist, bank teller, teacher's aid, and "general clerk." In a supplemental letter to Myers's lawyer, Provident expanded on its interpretation of Dr. Donnelly's report. Provident implicitly acknowledged that Dr. Donnelly found Myers to be permanently disabled. Nevertheless, Provident contended that Dr. Donnelly was not aware that Myers had job skills other than those required for a radiology technician. Provident focused on Dr. Donnelly's statement that Myers had "no other training or education that would enable her to easily perform any type of work outside of[the radiology] field." Of course, in her initial LTD application in 1989 Myers said she had the following skills: typing, p.c. operations, operation manuals writing, and research technician. Provident concluded that if Dr. Donnelly had been aware that Myers possessed these skills, he would have found that she was not totally disabled. In other words, Provident read Dr. Donnelly's report as indicating only that Myers was totally disabled from performing her prior job as a radiology technician. In support of this interpretation Provident contended that Dr. Donnelly had said that Myers was capable of standing for five hours during a work day and sitting for four hours. According to Provident, this meant that Myers could sit and stand "for over a full 8 hour work day."

Myers asked Provident's ERISA Committee to review the termination of her LTD benefits. During the review process Myers acknowledged, through her lawyer, that she had the skills and education "to perform numerous sedentary positions." She insisted, however, that she lacked the physical capacity to perform a sedentary job on a full-

6

time basis. She pointed out that she <u>attempted</u> to do two hours of clerical work each morning at home for her husband's business. This, however, required her to lie down for an extended period before she could attempt any further work. Myers submitted additional reports from Drs. Young and Yoder to the review committee. Dr. Young confirmed that Myers "has been disabled to return to her former occupation as X-ray Technician since 1992 due to severe spine disease." Dr. Young added that Myers "must limit her standing, sitting, and driving to one hour intervals" and that she must lie down for one hour intervals three times a day. Dr. Yoder said that Myers "is unable to sit for any extended period of time." Moreover, Dr. Yoder said that she is unable to stay in one position for more than thirty minutes without completely changing positions. "This would include sitting to standing, standing to walking, walking to sitting," the doctor explained. For its part in the review process, Provident asked one of its medical consultants, William C. Dowell, M.D., to review Myers's file and offer any comments. Dr. Dowell said only the following:

> It would seem that although [Myers] has significant orthopedic limitations, she would be a good candidate for vocational rehabilitation since she is in excellent health otherwise. A sedentary occupation would be probable.

Provident's ERISA Committee conducted its review and upheld the decision to terminate Myers's LTD benefits.

Myers then sued Provident and Hercules in federal court under ERISA § 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B), alleging the wrongful termination of her benefits. After a bench trial the district court concluded that Provident did not abuse its discretion in deciding to terminate Myers's benefits because the decision was supported by sufficient evidence. "Specifically," the court said, "Dr. Donnelly's Physical Capacities form, Dr. Dowell's report, and Myers's transferable employment skills sufficiently support Provident's decision to terminate Myers's LTD benefits." Myers now appeals.

II.

A.

We start off with the standard of review. Provident, as Claims Fiduciary under the Hercules Plan, had "the sole and exclusive discre-

tion" to make decisions about eligibility for benefits. As a general proposition, a fiduciary's discretionary decision will not be disturbed if it is reasonable, even if we would have reached a different conclusion. See Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 115 (1989). To assist courts in determining the reasonableness of a fiduciary's discretionary decision, we have developed a (non-exclusive) list of eight factors that may be considered. See Booth v. Wal-Mart Stores, Inc., 210 F.3d 335, 342-43 (4th Cir. 2000). Only two of the factors are implicated in this case: whether the fiduciary's decision-making process was reasoned and principled and whether the fiduciary's conclusion was supported by the evidence before it. See id.

B.

We now turn to whether Provident's discretionary decision to terminate Myers's LTD benefits was reasonable. We begin with the Plan language. A Plan participant, like Myers, is "considered totally disabled" and entitled to LTD benefits if she is "not able to engage in any employment for wage or profit for which [she is] reasonably qualified by training, education, or experience." Provident concluded that Myers was able to work full time in a sedentary job such as receptionist, bank teller, teacher's aid, or "general clerk."[1]

Provident contends first (and foremost) that its decision to terminate Myers's LTD benefits is supported by the physical capacities assessment form filled out by Dr. Donnelly. Dr. Donnelly indicated that in a single eight-hour work day Myers could stand five hours, walk six hours, sit four hours, or drive four hours. Provident picked two of these categories, standing and sitting, and concluded that Myers could alternate between standing and sitting straight through an eight-hour work day and beyond. This is an unreasonable reading of the form. When the hours Dr. Donnelly listed for each of the activities are added together, they total nineteen. Thus, if Provident is correct that the work activities can be combined in a single day, then Myers would be able to alternate among standing, walking, sitting,

_____

[1] The Plan provides that a participant's benefits may be reduced if she qualifies for part-time work at a certain level of earnings. Provident did not attempt to reduce Myers's benefits on the ground that she could work part time.

8

and driving on a job for nineteen hours straight without lying down to rest her back. It would be hard for anyone, let alone someone with a serious back condition, to do that. What Dr. Donnelly surely meant was that if a job was limited to the designated activity, such as standing or sitting, then Myers could perform it on a given day for the hours listed. Thus, Myers could either stand on a job for a total of five hours or sit for four. There is no indication that Dr. Donnelly meant that Myers could alternate between standing and sitting on a job for nine hours straight, as Provident contends. Indeed, Dr. Donnelly's ultimate conclusion was that "given the fact that [Myers] has recurrent back and leg symptoms, with prolonged walking, sitting or strenuous activity . . . this patient should continue to be considered permanently disabled from this problem." Provident also argues that Dr. Donnelly's conclusion that Myers was "permanently disabled" must be discounted because it was based on his erroneous assumption that she was only qualified to work as an x-ray technician. Provident thus contends that Dr. Donnelly would have said, if Provident had asked the right question, that Myers could work full time in a sedentary job. Again, Provident misreads Dr. Donnelly's report. Dr. Donnelly noted that prolonged sitting -- the very thing required in most sedentary jobs -- aggravated Myers's symptoms. This, among other factors, led to his conclusion that she was totally disabled.

Second, Provident claims that certain statements by Dr. Young, one of Myers's attending physicians, indicate that she could work in a sedentary job. A review of these statements indicates that Provident has taken each of them out of context. Provident notes that in a 1995 report Dr. Young checked a box indicating that Myers had some capacity for sedentary work. On the same form, however, Dr. Young reported that Myers was "now disabled" from engaging either in her regular occupation or in "any other work." Dr. Young added that Young could not be rehabilitated into any other work. Provident also points to a 1996 letter Dr. Young sent to an orthopedic specialist who was scheduled to see Myers. Dr. Young wrote, "I am happy to say [Myers] is one of our very best results [from lumbar instrumentation and fusion] and has little or no pain with good activity." Provident conveniently overlooks the very next sentence in which Dr. Young acknowledged that Myers "has never been able to return to work." Finally, Provident points to Dr. Young's 1996 report in which he said that Myers had "no pain at this time," but was incapable of "lifting,

9

stooping, bending, crawling or prolonged standing." This, Provident contends, meant that Myers could sit or stand while performing a sedentary job. Again, Provident ignores the thrust of Dr. Young's 1996 report: his diagnosis was "chronic back pain," and he concluded that Myers remained disabled from working at any full-time job.

Third, Provident argues that Myers's descriptions of her activities and a review of her x-rays provide evidence to support its decision to terminate her benefits. As for Myers's activities, Provident points to statements by her or her lawyer (1) that she could engage in "light activities," specifically, use an exercise bike and swim, (2) that she could do light housekeeping work, and (3) that she could do clerical work at home for about two hours a day for her husband's business. Although Myers did engage in certain light activities, she repeatedly emphasized to Provident that she needed considerable time each day to rest her back. Moreover, her lawyer reported to Provident that although Myers attempted to do clerical work at home for "up to two hours" each morning, "she must then lie down for an extended rest period before attempting an additional period of sedentary work in the afternoon." In short, there is nothing in the statements of Myers or her lawyer that supports Provident's decision. With respect to Myers's x-rays, Provident spends just three sentences in its brief to argue that certain x-ray reports provide evidence to support the conclusion that Myers is capable of sedentary work. This argument is not supported by the opinion of any doctor. For example, Dr. Donnelly, who examined Myers and reviewed her x-rays at Provident's request, concluded that she was permanently disabled.

Fourth, Provident argues that additional evidence submitted during the ERISA Committee review process supported the company's conclusion that Myers was not disabled from doing sedentary work. Provident points to certain statements by Dr. Young in 1997. Dr. Young said that Myers had good range of motion in her back and that "[o]verall, she is doing well with clinical evidence of lumbar and cervical spondylosis." Provident emphasizes that Young did not say that Myers was disabled from doing sedentary work. This, however, ignores what Dr. Young did say in 1997. Dr. Young said that Myers "must limit her standing, sitting, and driving to one-hour intervals" and that she must lie down for one hour intervals three times a day. The restrictions noted by Dr. Young in 1997 are entirely consistent

10

with his longstanding opinion that she is totally disabled from performing any full-time job, even a sedentary one. Finally, Provident cites the last sentence from the report of its medical consultant, Dr. Dowell, who said: "A sedentary occupation would be probable" for Myers. This last sentence must be read in light of what Dr. Dowell said before it. He first said that Myers "has significant orthopedic limitations" and that "she would be a good candidate for vocational rehabilitation." These observations led Dr. Dowell to his last comment, "A sedentary occupation would be probable." Dr. Dowell appears to be saying that a sedentary position would be probable only after rehabilitation. After all, Dr. Dowell had before him the reports of three other doctors who had examined Myers, all of whom said that she was presently disabled from doing any full-time work.

Our review of the record, which we have just detailed, reveals that the process by which Provident reached its decision to terminate Myers's LTD benefits was not reasoned and that its decision was not supported by the evidence. See Booth, 201 F.3d at 344. Provident reached its decision only by misreading some evidence and by taking other bits of evidence out of context. Reasonably read, the evidence does not support Provident's conclusion that Myers could work full time in a sedentary job. The company therefore abused its discretion when it terminated Myers's LTD benefits on June 2, 1997.**2**

The judgment of the district court entered in favor of Provident and Hercules is reversed. The case is remanded with the instruction that judgment be entered in favor of Linda Myers.

<u>REVERSED AND REMANDED</u>

_____

**2** Nothing in this opinion prevents Provident from continuing to undertake periodic reviews of Myers's disability status in accordance with the terms of the Plan.

11