Lou **THOMAS**, Plaintiff,

v.

**LIBERTY LIFE ASSURANCE COMPANY OF BOSTON**, Defendant.

No. CIV. H–02–1254.

United States District Court, D. Maryland.

Oct. 7, 2002.

Alan J. Hoff, Sellman Hoff LLC, Baltimore, MD, for Plaintiff.

Henry Mark Stichel, Gohn Hankey and Stichel LLP, Baltimore, MD, for Defendant.

## MEMORANDUM OPINION

ALEXANDER HARVEY, II, Senior District Judge.

In this civil action, plaintiff, Lou Thomas ("Thomas"), is seeking to recover benefits under his employer's long term disability plan which was insured by defendant Liberty Life Assurance Company of Boston ("Liberty Life"). This action was originally filed in the Circuit Court for Baltimore County and was removed by defendant to this Court pursuant to 28 U.S.C. § 1441, *et seq.* Count I of the original complaint asserted a claim of breach of contract, and Count II sought a recovery for defendant's bad faith refusal to pay policy benefits.

After the case was removed to this Court, defendant Liberty Life filed a motion to dismiss or for summary judgment, contending that the Employment Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001, *et seq.,* preempted the two state law claims asserted by plaintiff and that the complaint should therefore be dismissed. In its Order of April 25, 2002, this Court granted defendant's motion to dismiss and also granted plaintiff leave to file an amended complaint alleging a proper ERISA claim. In his amended complaint, plaintiff Thomas asserts that this action arises under ERISA, and he seeks declaratory, injunctive and equitable relief under that statute as well as attorneys' fees and costs. Plaintiff alleges that he became disabled during the period of his employment with Chase Manhattan Bank ("Chase Bank"), that he applied for benefits under the bank's long term disability plan which was insured by defendant Liberty Life and that his claim was denied.

Presently pending in the case is defendant's motion to dismiss or for summary judgment. Plaintiff in turn has filed a cross-motion for summary judgment. Memoranda and voluminous exhibits have been submitted by the parties in support of their pending motions. A hearing has been held in open court. For the reasons stated herein, plaintiff's motion for summary judgment will be denied, and defendant's motion for summary judgment will be granted.

I

## Background Facts

Plaintiff Thomas was employed by Chase Bank for several years as a loan officer. As an employee of Chase Bank, Thomas was a participant in its employee benefit plan which was established pursuant to ERISA and which provided, *inter alia,* long term disability benefits. Chase Bank had purchased from Liberty Life a "group disability income policy," and it is

that policy ("the Policy") which is at issue here. The Policy defines the term "disability" and contains provisions which identify persons eligible to receive benefits. During the first twenty-four months of an employee's disability, he is required, in order to qualify for benefits under the Policy, to show that he is merely unable to perform all of the material and substantial duties *of his occupation.* For an employee to be entitled to benefits after the first twenty-four months, the test becomes stricter, and it is required that the employee be unable to perform, with reasonable continuity, all of the material and substantial duties *of his own or any other occupation* for which he is or becomes reasonably fitted by training, education, experience, age and physical and mental capacity.

Thomas has a history of serious health problems which date back to 1984 when he had a heart attack. At the time, he was diagnosed with diabetes, and Thomas' present health problems are mainly attributable to his diabetes.[1] In 1996, he began experiencing pain in his legs, and as a result a vascular bypass was performed on his right leg. However, because of this surgery he developed a staff infection which lingered for months, requiring three separate procedures for the wound to heal. He then began experiencing pain in both of his feet and underwent several unsuccessful nerve blocks in an attempt to alleviate the pain. In August of 1997, he was forced to take a leave of absence from work to undergo another vascular bypass in his right leg. However, his leave of absence became permanent when his condition did not improve. Since he could not return to work, Thomas submitted an application requesting the payment under the Policy of long term disability benefits based on his claimed inability to perform

his duties as a loan officer with Chase Bank. On March 26, 1998, Liberty Life approved Thomas' application for benefits. The payment of benefits was made retroactive to February 11, 1998.

In November 1998, Liberty Life began a follow-up investigation of Thomas' claim as well as an investigation into whether Thomas would be eligible for benefits beyond the initial twenty-four month period. Liberty Life undertook at the time to assist Thomas in obtaining Social Security disability benefits. In February 1999, an Administrative Law Judge determined that Thomas was totally disabled and awarded him disability benefits.

In March 1999, Thomas' claim under the Policy was referred for internal review to a registered nurse employed by Liberty Life. The nurse examined the medical records in Thomas' file and contacted Thomas' treating physicians requesting updated records. After reviewing new records submitted by some of Thomas' doctors, the nurse recommended that his file be reviewed by an outside peer review consultant.

Thomas' complete file was then sent to Dr. Stephen Jones for outside peer review. After examining the file and speaking with Dr. Roger Scheider who was one of Thomas' treating doctors, Dr. Jones concluded that Thomas was then able to continue to work as a bank officer and that there was no vascular surgery condition preventing Thomas from returning to work.

After receiving Dr. Jones' report, Liberty Life sent a copy of it to Dr. James Mersey for his comments. Dr. Mersey, another of Thomas' treating doctors, agreed with the assessment of Thomas' vascular condition, but opined that Thom-

---

1. This medical condition and his heart disease were present when Thomas commenced his employment with Chase Bank.

as' disability was due to his painful neuropathy which is "unrelieved by any medications, and all have been tried." Dr. Mersey also filled out a physical capacities form indicating that Thomas could stand only 20% of the day, lift 2% of the day, walk and stand 5% of the day, and drive 10% of the day. Liberty Life then requested that Dr. Mersey supply an EMG/nerve conduction report confirming the existence of peripheral neuropathy. Dr. Mersey sent additional records to Liberty Life in response to its request, but the records did not include an EMG report.

During the summer of 1999, Liberty Life hired an independent investigator to determine if Thomas was then engaged in gainful employment and whether his claimed inability to perform certain functions was true. Thereafter, the investigator observed Thomas for a few hours a day for a total of five separate days between July 21 and November 29, 1999. The investigator then submitted to Liberty Life a surveillance videotape and a report documenting that Thomas regularly engaged in shopping activities, that he entered and exited stores in a fairly mobile manner, that he entered and alighted from his car and drove about without difficulty, and that on one occasion he carried a gallon of paint out of a store to his car.

In November 1999, Liberty Life requested that an independent neurological examination of Thomas be undertaken. Thomas was referred to Dr. Sheldon Margulies who examined Thomas on November 29, 1999. Dr. Margulies confirmed that Thomas suffered from peripheral neuropathy, but noted that there was no supersensitivity in his feet as is usually seen in painful neuropathy, and that "symptom exaggeration is evident." Dr. Margulies had manipulated the joints in Thomas' right foot without complaints of pain and was thus unable to verify his complaints of right foot pain. Dr. Margulies concluded,

In my opinion, the medications Mr. Thomas is taking for his painful diabetic polyneuropathy are not optimal. He should be evaluated at John Hopkins in the Neurology Department or the Pain Clinic. With improved pain control, it is my opinion which I hold to a reasonable degree of medical certainty that Mr. Thomas would be capable of some type of meaningful work utilizing his prior skills in mortgage banking.

Dr. Margulies also filled out a physical capacities form indicating that Thomas could stand 30–40% of the day, lift light objects 100% of the day, walk 50% of the day, stand 20–25% of the day, and drive 25% of the day. Later, Dr. Margulies supplemented his report after viewing the videotapes taken by the independent investigator hired by Liberty Life. Dr. Margulies concluded that the videotapes "strongly suggest that Mr. Thomas' gait is less affected than he asserts."

On December 16, 1999, Liberty Life sent to Dr. Mersey a copy of Dr. Margulies' report, a copy of the investigator's report and the videotape, requesting that Dr. Mersey comment by December 29, 1999. At about the same time, Liberty Life had an independent vocational/disability consultant perform an analysis of Thomas' work skills. The consultant reviewed Dr. Margulies report and interviewed Thomas. She concluded that several sedentary occupations were consistent with Thomas' work experience, skills, and education.

By letter dated January 6, 2000, Liberty Life denied the claim which Thomas had filed for disability benefits for the period beyond the twenty-four months when benefits had been paid to him.[2] Relying on medical records and reports from Dr.

---

2. Dr. Mersey's comments on Dr. Margulies' report had not been received by then.

Jones, Dr. Scheider, Dr. Robert Murphy, Dr. Margulies, Dr. Mersey, and the vocational consultant, Liberty Life concluded that Thomas then had the ability to engage in various occupations outside his previous position, including loan processor, loan officer, closer, credit analyst and loan review analyst. On January 18, 2000, Dr. Mersey responded to Liberty Life's earlier request for comments on Dr. Margulies' report. Dr. Mersey stated that he disagreed with the conclusions of Dr. Margulies, that it was his opinion that Thomas' disability was a result of pain and that "it is impossible to gauge pain by a clinical exam or by a videotape." Dr. Mersey also stated that he found Thomas to be an "entirely trustworthy and honest individual" and that he believed Thomas' assertion that his pain prevented him from sitting still for any length of time or from concentrating on work for an eight hour day.

On February 18, 2000, Thomas requested a review of Liberty Life's denial of his claim. In support of that request, Thomas submitted Dr. Mersey's letter of January 18, 2000 and two new medical reports. The first was a report from Dr. Wayne Reichman which stated that "it does not appear that [Thomas] will be able to continue work in its present form." The second report was from Dr. Marvin Mordes who concluded that "based on his present condition, I feel [Thomas] is not able to resume his previous occupation as a mortgage banker." Neither of these new reports addressed the question whether Thomas could perform duties of some occupation other than mortgage banking.

On April 19, 2000, Liberty Life denied Thomas' request for a review of its decision of January 6, 2000. Liberty Life took the position that Dr. Mersey had offered no medical explanation regarding the symptom magnification noted by Dr. Margulies nor regarding Dr. Margulies' statement that Thomas' physical examination was inconsistent with his complaints.

On March 1, 2002, Thomas filed suit in the Circuit Court for Baltimore County, contesting Liberty Life's denial of his claim for disability benefits after the first twenty-four months during which he had received payments.

## II

### Summary Judgment Principles

A defendant moving for summary judgment bears the burden of showing the absence of any genuine issue of material fact and that it is entitled to judgment as a matter of law. *Barwick v. Celotex Corp.,* 736 F.2d 946, 958 (4th Cir.1984). Where, as here, the nonmoving party will bear the ultimate burden of persuasion at trial, "the burden on the moving party [at the summary judgment stage] may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

One of the purposes of Rule 56 of the Federal Rules of Civil Procedure is to require a plaintiff, in advance of trial and after a motion for summary judgment has been filed and properly supported, to come forward with some minimal facts to show that the defendant may be liable under the claims alleged. *See* F.R.Civ.P. 56(e). If the nonmoving party "fail[s] to make a sufficient showing on an essential element of [its] case with respect to which [it] has the burden of proof," then "the plain language of Rule 56(c) mandates the entry of summary judgment." *Catrett,* 477 U.S. at 323, 106 S.Ct. 2548.

While the facts and all reasonable inferences drawn therefrom must be viewed in the light most favorable to the party op-

posing the motion, *Ross v. Communications Satellite Corp.*, 759 F.2d 355, 364 (4th Cir.1985), "when the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). " 'A mere scintilla of evidence is not enough to create a fact issue; there must be evidence on which a jury might rely.' " *Barwick*, 736 F.2d at 958–59 (quoting *Seago v. North Carolina Theatres, Inc.*, 42 F.R.D. 627, 640 (E.D.N.C. 1966), *aff'd*, 388 F.2d 987 (4th Cir.1967), *cert. denied*, 390 U.S. 959, 88 S.Ct. 1039, 19 L.Ed.2d 1153 (1968)). Moreover, only disputed issues of *material* fact, determined by reference to the applicable substantive law, will preclude the entry of summary judgment. "Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

In the absence of the necessary minimal showing by the plaintiff that the defendant may be liable under the claims alleged, the defendant should not be required to undergo the considerable expense of preparing for and participating in a trial. *See Catrett*, 477 U.S. at 323–24, 106 S.Ct. 2548; *Anderson*, 477 U.S. at 256–57, 106 S.Ct. 2505. Indeed, the Fourth Circuit has stated that, with regard to motions for summary judgment, the district courts have "an affirmative obligation ... to prevent 'factually unsupported claims and defenses' from proceeding to trial." *Felty v. Graves–Humphreys Co.*, 818 F.2d 1126, 1128 (4th Cir.1987) (quoting *Catrett*, 477 U.S. at 323–24, 106 S.Ct. 2548).

Applying these principles to the facts of record here, this Court has concluded that defendant's motion for summary judgment must be granted and that plaintiff's cross motion for summary judgment must be denied.[3] Since the facts of record here "taken as a whole could not lead a rational trier of fact to find for the [plaintiff], there is no genuine issue for trial." *Matsushita*, 475 U.S. at 587, 106 S.Ct. 1348. Inasmuch as defendant's motion for summary judgment is being granted, plaintiff's motion for summary judgment must be denied.

## III

### *Applicable ERISA Principles*

Principles applicable in a suit like this one brought under ERISA were enunciated by the Supreme Court in *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989). In that case, the Supreme Court held that a denial of benefits challenged in a suit brought under 29 U.S.C. § 1132(a)(1)(B) "is to be reviewed under a *de novo* standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Id.* at 115, 109 S.Ct. 948. If discretionary powers are given to the administrator or fiduciary under the plan, its decisions are reviewed under an abuse of discretion standard and will not be disturbed if they are reasonable. *Id.*

During the past few years, the Fourth Circuit has developed a "well-settled framework" for review by a court of a fiduciary's denial of benefits claimed under an ERISA plan. *Ellis v. Metropolitan Life Ins. Co.*, 126 F.3d 228, 232 (4th Cir. 1997). As an initial matter, the reviewing court must determine *de novo* whether the ERISA plan confers discretionary authority on the administrator or fiduciary and if

---

**3.** Since defendant's motion for summary judgment is being granted, there is no need for the Court to address defendant's motion to dismiss.

so, whether the administrator or fiduciary acted within that discretion. *Id.* at 233; *Haley v. Paul Revere Life Ins. Co.*, 77 F.3d 84, 89 (4th Cir.1996). The threshold question in a case of this sort is whether or not the plan provides the administrator discretion either to settle disputed eligibility questions or to construe doubtful provisions. *Sheppard & Enoch Pratt Hosp. v. Travelers Ins. Co.*, 32 F.3d 120, 123–24 (4th Cir.1994). A federal court's ability to review an administrator's decision is severely limited where the administrator has discretion to determine eligibility or construe the terms of the plan. *Elliott v. Sara Lee Corp.*, 190 F.3d 601, 605 (4th Cir.1999). An administrator with such discretion can be reversed only upon a finding of abuse of discretion. *Id.*

If the reviewing court decides that the particular plan at issue vests in its administrator or fiduciary discretion to determine a claimant's eligibility for benefits, a deferential standard is to be applied. Under this deferential standard, the administrator or fiduciary's decision will not be disturbed if it is reasonable, even if the reviewing court would have come to a different conclusion independently. *Ellis*, 126 F.3d at 232; *see Bruch*, 489 U.S. at 115, 109 S.Ct. 948; *Haley*, 77 F.3d at 89. The decision of an administrator or fiduciary is reasonable if it is " 'the result of a deliberate, principled reasoning process and if it is supported by substantial evidence.' " *Ellis*, 126 F.3d at 232 (quoting *Brogan v. Holland*, 105 F.3d 158, 161 (4th Cir.1997)); *Booth v. Wal–Mart Stores, Inc.*, 201 F.3d 335, 341 (4th Cir.2000).

In support of the claim asserted by him in this case, plaintiff Thomas contends that a substantial factor which the Court must consider is that defendant Liberty Life, acting as the fiduciary here, had a conflict of interest when it denied his claim for benefits. Plaintiff points out that defendant's exercise of discretion had a direct financial effect on its profitability and that defendant's resulting conflict of interest must be weighed as a factor in determining whether there has been an abuse of discretion. *See Bruch*, 489 U.S. at 115, 109 S.Ct. 948. The Fourth Circuit has also established "a well-developed framework" for consideration by a reviewing court of a conflict of interest of the sort existing in this case. *Ellis*, 126 F.3d at 233. A court must apply the conflict of interest factor on a case-by-case basis in order to lessen the deference normally given under the applicable discretionary standard of review. *Id.* However, deference should be lessened only to the extent necessary to counteract any influence unduly resulting from such conflict of interest. *Id.* In *Bedrick v. Travelers Ins. Co.*, 93 F.3d 149, 152 (4th Cir.1996), the Court, harmonizing *Bruch* and Circuit law and quoting *Bailey v. Blue Cross and Blue Shield of Virginia*, 67 F.3d 53, 56 (4th Cir.1995), *cert. denied*, 516 U.S. 1159, 116 S.Ct. 1043, 134 L.Ed.2d 190 (1996), said the following:

> [W]hen a fiduciary exercises discretion in interpreting a disputed term of the contract where one interpretation will further the financial interests of the fiduciary, we will not act as deferentially as would otherwise be appropriate. Rather, we will review the merits of the interpretation to determine whether it is consistent with an exercise of discretion by a fiduciary acting free of the interests that conflict with those of the beneficiaries. In short, the fiduciary decision will be entitled to some deference, but this deference will be lessened to the degree necessary to neutralize any untoward influence resulting from the conflict.

In *Ellis*, the Fourth Circuit emphasized that, even if a conflict of interest existed, a court should nevertheless "in no case" deviate from the abuse of discretion standard. *Ellis* 126 F.3d at 233. Rather, the approach to be taken should be as follows:

Instead, the court modifies that abuse of discretion standard according to a sliding scale. The more incentive for the administrator or fiduciary to benefit itself by a certain interpretation of benefit eligibility or other plan terms, the more objectively reasonable the administrator or fiduciary's decision must be and the more substantial the evidence must be to support it.

*Id.*

In determining the reasonableness of an administrator's discretionary decision the Fourth Circuit in *Booth*, 201 F.3d at 342–43, listed eight factors which a court may consider, but is not limited to:

(1) the language of the plan; (2) the purpose and goals of the plan; (3) the adequacy of the materials considered to make the decision and degree to which they support it; (4) whether the fiduciary's interpretation was consistent with other provisions in the plan and with earlier interpretations of the plan; (5) whether the decision making process was reasoned and principled; (6) whether the decision was consistent with the procedural and substantive requirements of ERISA; (7) any external standard relevant to the exercise of discretion; and (8) the fiduciary's motives and any conflict of interest it may have. *Id.*

Under an abuse of discretion review, "an assessment of the reasonableness of the administrator's decision must be based on the facts known to it at the time." *Sheppard & Enoch Pratt Hosp.*, 32 F.3d at 125. The Fourth Circuit has held that it is not an abuse of discretion for a plan fiduciary to deny disability pension benefits "where conflicting medical reports were presented." *Elliott*, 190 F.3d at 606 (citing *Ellis*, 126 F.3d at 234). In *Ellis*, the court found no abuse of discretion in upholding the administrator's denial where the claimant's primary medical provider's findings were in conflict with those of an independent panel of medical specialists.

Applying these principles, this Court must determine on the record here whether the defendant's decision was based on substantial evidence and whether its review process was thorough and evinced a deliberate, principled reasoning process. *Id.* at 234. Presented with a case like this one in which the fiduciary may have a conflict of interest, this Court should also review the merits of the defendant's decision to determine whether it was consistent with an exercise of discretion by a fiduciary, acting free of the interests which would conflict with those of the beneficiary. *Id.* at 233; *Bedrick*, 93 F.3d at 152.

IV

*Discussion*

Section 7 of the Policy at issue here provides in pertinent part, as follows:

Liberty shall possess the authority, in its sole discretion, to construe the terms of this policy and to determine benefit eligibility hereunder. Liberty's decisions regarding construction of the terms of this policy and benefit eligibility shall be conclusive and binding.

Clearly, the Policy confers discretionary authority on defendant Liberty Life to determine benefit eligibility of an employee of Chase Bank. Indeed, the language in the Liberty Life Policy is similar to that before the Court in *Ellis*, in which case both the parties and the Court agreed that the defendant's denial of benefits should be reviewed under an abuse of discretion standard. 126 F.3d at 233.

This Court further concludes that Liberty Life's decision must in this case be analyzed under the modified abuse of discretion standard. Liberty Life has a conflict of interest in this case because the Policy is self-funding in that any payments

for long term benefits are made directly by Liberty Life. The approach which this Court must follow in a case of this sort is that outlined in both *Bedrick*, 93 F.3d at 152, and *Ellis*, 126 F.3d at 233–34. In view of the conflict of interest factor which exists in this case, this Court will review the decision of Liberty Life to determine whether it is consistent with an exercise of discretion by a fiduciary acting free of the interests that conflict with those of the beneficiaries. 93 F.3d at 152; 126 F.3d at 233–34.

■ In seeking summary judgment, defendant argues that even under the modified abuse of discretion standard, there is substantial evidence in its claim file demonstrating that Liberty Life did not abuse its discretion in concluding that Thomas was not disabled. Noting that the critical issue is whether Thomas' claims of disabling pain were credible, defendant Liberty Life points out that there were in the claim file conflicting medical opinions relating to the severity of plaintiff's pain.

In support of its cross motion for summary judgment, plaintiff argues that evidence of record here demonstrates that Liberty Life abused its discretion in denying Thomas' claim. Plaintiff asserts that the overwhelming weight of the evidence contained in Liberty Life's claim file shows that Thomas was in fact totally disabled. According to plaintiff, even the observations of defendant's investigator are fully consistent with the claims of Thomas and his doctors.

On the record here, this Court finds and concludes that the decision reached by defendant Liberty Life in denying plaintiff's claim for benefits was the result of a deliberate, principled reasoning process. The Court further concludes on the record here

that Liberty Life's denial of plaintiff's claim was based on substantial evidence.

That defendant's decision was based on a deliberate, principled reasoning process is quite apparent. The claim file which formed the basis for Liberty Life's decision contains over 900 pages of medical records, questionnaires filled out by various physicians, questionnaires completed by Thomas and other miscellaneous correspondence and records.[4] Liberty Life spent over a year reviewing Thomas' medical records, securing additional medical records from his doctors, having Thomas evaluated and examined by independent physicians and soliciting further comments from one of Thomas' treating physicians concerning reports and opinions of non-treating doctors. When it reached its decision denying plaintiff's claim, Liberty Life had before it medical records of five physicians who had examined Thomas, as well as the report of a vocational consultant.

Moreover, Liberty Life's decision was based on substantial evidence. As shown by the claim file, Thomas suffered from several different conditions, including diabetic retinopathy, vascular conditions and peripheral neuropathy. While the numerous medical records in the file discuss each of these conditions, the essential issue presented to Liberty Life was whether any one or more of these conditions was so severe that Thomas was unable to perform, with reasonable continuity, all of the material and substantial duties of any occupation for which he was reasonably fitted. As became clear during Liberty Life's investigation of various elements of his medical condition, Thomas' disability claim was based essentially on the disabling pain which he maintained he was suffering as a result of his peripheral neuro-

---

**4.** Although the claim file contains over 900 pages, many of the reports and records appear more than once, and some appear multiple times.

pathy. This was acknowledged by Dr. Mersey who stated in his letter of January 18, 2000 that Thomas' disability has nothing to do with his gait or with weakness "but only has to do with pain."

Only two physicians directly addressed whether the pain caused by Thomas' peripheral neuropathy was disabling. It was the opinion of Dr. Margulies, based on his manipulation of Thomas' right foot, that symptom exaggeration was evident and that there was no supersensitivity in Thomas' feet as is often found in cases of painful neuropathy. According to Dr. Margulies, Thomas could stand 30–40% of the day, lift light objects 100% of the day, walk 50% of the day, stand 20 or 25% of the day and drive a vehicle 25% of the day. In contrast, it was Dr. Mersey's opinion that Thomas' pain was disabling. According to Dr. Mersey, Thomas could stand only 20% of the day, lift objects 2% of the day, walk 5% of the day and drive and travel 10% of the day. Dr. Mersey based his opinion as to the severity of Thomas' pain solely on Thomas' own statements concerning the pain being experienced.

Applying the modified abuse of discretion standard, this Court concludes that defendant Liberty Life did not abuse its discretion in rejecting plaintiff's claim for long term disability benefits. That Liberty Life, faced with conflicting opinions of physicians who examined Thomas, accepted the opinion of Dr. Margulies rather than that of Mr. Mersey is not an abuse of discretion. The Fourth Circuit so held in the *Ellis* case, 126 F.3d 228. In *Ellis*, the record contained conflicting medical opinions as to whether the claimant was disabled. *Id.* at 231–232. Because of the conflicting opinions, the administrator referred the claim file to an independent board of physicians on three separate occasions and provided the board's report to plaintiff's doctors for comment. *Id.* After being unable to resolve the inconsistencies,

defendant denied the plaintiff's claim and his request for reconsideration. *Id.*

In *Ellis,* the Fourth Circuit upheld the district court's grant of summary judgment in favor of the defendant, finding that even applying the modified abuse of discretion standard, the administrator did not abuse its discretion. *Id.* at 233. The Court summarized its holding as follows:

> Faced with conflicting evaluations by the claimant's own health care providers, no conclusive diagnosis, and three separate reports of an independent panel of medical specialists finding no incompatibility between her functional limitations and her job requirements, a fiduciary free of any conflict of interest would have been more than reasonable in rejecting Ellis's claim and preserving the Plan's funds for those beneficiaries who satisfy the Plan's definition of "disabled."

*Id.* at 234.

Plaintiff argues that since the opinion of Dr. Margulies concerning the severity of Thomas' pain was conditioned on his receiving improved pain control and since Dr. Mersey had already explained that Thomas' pain was unrelieved by any medications, substantial evidence of record indicates that Thomas' pain was disabling. But plaintiff fails to consider other portions of Dr. Margulies' report besides that pertaining to improved pain control. Dr. Margulies' finding of symptom exaggeration, his assessment of Thomas' physical capacities, and his determination after examining Thomas and manipulating his right foot that there was no supersensitivity in Thomas' feet represent substantial evidence that the pain being experienced by Thomas was not as severe as Thomas himself or Dr. Mersey suggested. Moreover, Dr. Margulies' report suggesting that improved pain control was possible indicates that it was just a matter of send-

ing Thomas to a pain specialist to find more effective medication.

Plaintiff also argues that Liberty Life never made an effort to establish that the pain control mentioned by Dr. Margulies was possible. There is no merit to this argument. Under the Policy at issue, it is the claimant's burden to present competent proof of his continued disability. If Thomas believed that an additional examination would have resulted in additional proof that his pain was disabling, it was his burden to arrange for such an examination by a physician and to timely forward the results to Liberty Life.

In determining that Thomas' claim of disabling pain was not credible, Liberty Life relied not only on the report of Dr. Margulies, but also on that of an independent investigator. The investigator supplemented his report by a surveillance videotape which shows Thomas on five different dates walking, driving his car, carrying groceries and carrying a paint can from a store to his car.[5] As noted by defendant, the investigator's observations of plaintiff on five different days contradict Thomas' written statement concerning his inability to engage in various day-to-day activities.

Although the record here is an extensive one and includes hundreds of pages of medical records in Liberty Life's claim file covering the period from November of 1998 through January and April of 2000, only one unidentified person other than Dr. Mersey ever indicated that any of Thomas' conditions rendered him totally disabled. That other person was not identified by name. There is a note in the

claim file dated April 27, 1999 explaining that someone from an entity known as Vascular Surgeons telephoned Liberty Life indicating that certain doctors at Vascular Surgeons felt that Thomas was "truly disabled." Thomas has also relied on the opinions of two doctors which were submitted after Liberty Life had denied plaintiff's application for further benefits in January of 2000. These two opinions are entitled to little weight because the doctors merely concluded that Thomas could not return to his previous occupation. The question which Liberty Life had to determine from the evidence before it was whether Thomas was unable to perform duties of any other occupation besides his employment with Chase Bank for which he was reasonably fitted.[6]

Plaintiff notes that an Administrative Law Judge ("ALJ") of the Social Security Administration found him to be disabled and entitled to disability insurance benefits. While an ALJ's finding in a Social Security case may be considered as evidence, it is not determinative. *Elliott,* 190 F.3d at 607; *Brogan v. Holland,* 105 F.3d 158, 163 (4th Cir.1997). An ALJ's determination that a claimant suffers from a disability under Social Security regulations does not require a plan administrator to reach the same conclusion in an ERISA case. *Coker v. Metropolitan Life Ins. Co.,* 281 F.3d 793, 798 (8th Cir.2002). A determination made under an ERISA plan is not controlled by a Social Security determination since a court owes no deference to findings made under the Social Security Act. *Ciulla v. Usable Life,* 864 F.Supp. 883, 888 (W.D.Ark.1994).

---

**5.** The Court has viewed this videotape in its entirety and agrees that it supports the position taken by defendant in this case.

**6.** Plaintiff has also relied on certain evidence in the record here which was not a part of Liberty Life's claim file. That evidence will

not be considered since in a case of this sort the district court is limited to reviewing the evidence which was before the plan administrator at the time of its decision. *Bernstein v. CapitalCare, Inc.,* 70 F.3d 783, 788 (4th Cir. 1995).

Plaintiff's reliance on *Myers v. Hercules, Inc.,* 253 F.3d 761 (4th Cir.2001) is misplaced. In *Myers,* the Fourth Circuit concluded that the plan administrator had abused his discretion by misreading evidence and taking evidence out of context. *Id.* at 768. In *Myers,* there were no medical records which refuted plaintiff's claim and no medical examinations of plaintiff which contradicted his claims of pain. Most significantly, all of the doctors who examined the plaintiff uniformly and repeatedly stated that the plaintiff was totally disabled. *Id.* at 763–64.

A more pertinent Fourth Circuit opinion is the Court's decision in *Dwyer v. Metropolitan Life Ins. Co.,* 4 Fed.Appx. 133 (4th Cir.2001). In that case, the claimant's primary doctor summarized her back condition as "totally disabling." *Id.* 4 Fed. Appx. at 137–38. Since this opinion was inconsistent with certain other reports, defendant arranged for a further review of plaintiff's medical condition by an independent physician consultant who concluded that plaintiff was not disabled. Judge Smalkin of this Court granted summary judgment in favor of defendant. On appeal, the Fourth Circuit affirmed Judge Smalkin's decision, finding that even under the modified abuse of discretion standard, the denial of plaintiff's claim was not an abuse of discretion. *Id.* 4 Fed.Appx. at 139–40. The Court rejected plaintiff's argument that her treating physician's opinion was entitled to more weight than the opinion of an independent consultant and concluded, *citing Ellis,* that it is not an abuse of discretion for an administrator to deny benefits in a case in which conflicting reports have been presented. *Id.* 4 Fed. Appx. at 140. The Court emphasized that, of the many physicians who commented on plaintiff's pain and discomfort, only one opined that she was unable to work. *Id.*

## V

### *Conclusion*

For the reasons stated herein, this Court concludes that the decision of defendant Liberty Life which denied plaintiff's claim for long term disability benefits under his employer's disability plan was reached as the result of a deliberate, principled reasoning process. The Court is further satisfied that such denial was reasonable because it was based on substantial evidence and that Liberty Life did not therefore abuse its discretion in reaching that decision.

On the record here, the Court concludes that a fiduciary free of any conflict of interest would have acted reasonably in rejecting plaintiff's claim and thereby preserving the Plan's definition of "totally disabled." *See Ellis,* 126 F.3d at 234. Consideration by the Court of the conflict of interest factor in this case does not alter its conclusion that substantial evidence supported the decision reached by Liberty Life and that Liberty Life did not abuse its discretion in reaching that decision.

Accordingly, defendant's motion for summary judgment will be granted, and plaintiff's motion for summary judgment will be denied. An appropriate Order will be entered by the Court.