27 F.3d 563
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
Richard F. HEZEL, Plaintiff-Appellant,
v.
AON CORPORATION; Aon Corporation Long Term Disability Plan;
Aon Corporation Short Term Disability Plan; The Life
Insurance Company of Virginia; Combined Insurance Company
of America, Defendants-Appellees,
and
Barbara MOLLOY, Plan Administrator; Brookfield, Inc., Defendants.
 No. 93-2074.
 United States Court of Appeals, Fourth Circuit.
 Argued: June 6, 1994.
Decided: July 6, 1994.
 
 Appeal from the United States District Court for the Eastern District of Virginia, at Richmond. Richard L. Williams, Senior District Judge. (CA-93-10)
 John Bertram Mann, Levit & Mann, Richmond, Virginia, for Appellant.
 Samuel M. Brock, III, Mays & Valentine, Richmond, Virginia, for Appellees.
 Robert L. Flax, Flax & Embrey, Richmond, Virginia, for Appellant.
 Gerard J. Roerty, Jr., Mays & Valentine, Richmond, Virginia, for Appellees.
 E.D.Va.
 AFFIRMED.
 Before MURNAGHAN, WILKINSON, and WILKINS, Circuit Judges.
 OPINION
 PER CURIAM:
 
 
 1
 Plaintiff Richard F. Hezel has appealed from the district court's grant of summary judgment in favor of the defendants, Life Insurance Company of Virginia ("LOV") and LOV's parent, AON Corporation ("AON"), in a dispute over disability benefits covered by the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. Secs. 1001 et seq.
 
 
 2
 * The pertinent facts are largely undisputed. Hezel was employed by LOV for six years, from the spring of 1984 until the spring of 1990. For much of that time, the employment relationship was mutually satisfactory; but, beginning at some point in the late 1980s, Hezel's job performance began to deteriorate. Although in retrospect Hezel attributes that decline to the onset of Alzheimer's Disease, at the time he did not seek out the care or attention of a physician. On April 18, 1990 LOV terminated his employment, effective on May 2, 1990. The termination of Hezel's employment relationship with LOV also put an immediate end to his coverage under AON's short-term and longterm disability benefits plans ("the Plan").[1]
 
 
 3
 In the fall of 1990 Hezel was diagnosed as suffering from "dementia/organic brain disorder," i.e., Alzheimer's Disease. On March 15, 1991, nearly a year after his termination, Hezel submitted a claim for disability benefits under the Plan, along with various supportive documents. AON denied his claim on the ground that he did not show that he had been "totally disabled," within the meaning of the Plan. The Plan expressly provides a two-part definition of that term: "Total disability means that you are under the regular care and attention of a legally licensed physician and that you are unable to perform the duties of your occupation."
 
 
 4
 About six months after the initial denial of benefits, Hezel submitted additional documents, but again AON rejected his claims. Hezel appealed to the Plan Administrator, who denied his claims in January 1992, on the grounds that he was ineligible under both parts of the Plan's definition of "total disability." Specifically, the Plan Administrator's decision stated that Hezel's documentation (1)showed that he had not received treatment for his Alzheimer's Disease until "well after" April 18, 1990, the date of his termination; and (2)failed to show that he had been unable to perform the duties of his occupation prior to April 18, 1990.
 
 
 5
 On January 7, 1993 Hezel filed the instant action in the United States District Court for the Eastern District of Virginia, claiming that AON had wrongfully denied his claims for disability benefits under the Plan, in violation of ERISA. The district court found that the Plan Administrator's "determination that Hezel was not under the care of a licensed physician for his assertedly disabling condition during the relevant period was neither arbitrary nor capricious." Therefore, the court granted summary judgment for the defendants. Hezel has appealed.
 
 II
 
 6
 The Plan provides that neither short-term nor long-term disability benefits are available unless the employee is "totally disabled," i.e., is "under the regular care and attention of a legally licensed physician" and is "unable to perform the duties of [his] occupation." The Plan thereby sets forth two eligibility criteria for disability benefits, which we may refer to as the "under a physician's care" criterion and the "unable to perform" criterion. The Plan, however, does not expressly state when the employee must meet those two criteria. AON has argued that both criteria must be met while the employee is still under the Plan's coverage (i.e., in Hezel's case, prior to the termination of his employment).
 
 
 7
 Hezel has argued that the Plan is, at a minimum, ambiguous as to when an employee must be under a physician's regular care and attention. He interprets the Plan to allow eligibility for an employee so long as he was under a physician's regular care and attention before filing his claim for disability benefits, regardless of whether the physician's care began before or after the date of termination. Thus, under Hezel's interpretation of the Plan, the undisputed fact that he first came under a physician's regular care and attention in the fall of 1990--several months after his April 1990 termination, but several months before he filed his claim for benefits--cannot preclude him from receiving benefits under the Plan.
 
 
 8
 In support of his interpretation, Hezel has relied heavily on a decision of the United States District Court for the District of Kansas, de Coninck v. Provident Life and Accident Insurance Co., 747 F.Supp. 627 (D. Kan.1990). The de Coninck court interpreted an ERISA plan provision--which stated, " 'In order to receive benefits you must be under the regular treatment of a legally qualified physician' "--and held that the provision was ambiguous and should be construed in favor of the employee. Id. at 633 (quoting the plan). The de Coninck decision was never tested on appeal and, as far as we can tell, has never been cited in any published (or unpublished) opinion of any court. Furthermore, it is difficult, if not impossible, to reconcile the Kansas district court's holding with the Sixth Circuit's oft-cited decision in Perry v. Simplicity Engineering, 900 F.2d 963, 964-65, 967 (6th Cir.1990). Perry held that a similarly worded provision in an ERISA plan "clearly" required a claimant to be "totally disabled while he had coverage [and was still] on the[employer's] payroll." Id. at 967 (emphasis added). The Sixth Circuit left no room for ambiguity, as it concluded: "[T]he district court's grant of summary judgment for [the defendant-employer] was correct; no other result was possible, even [under a] de novo standard of review...." Id. Similarly, we hold that the AON Plan provision at issue here is unambiguous and fatal to Hezel's claim.
 
 
 9
 Hezel's interpretation of AON's Plan is wrong, for several reasons. First, the Plan expressly provides that "coverage will stop on the date [the employee] terminate[s] employment." Therefore, by the time that Hezel came under the regular care and attention of a physician, in the fall of 1990, he was no longer covered by the Plan.
 
 
 10
 Second, although Hezel and AON disagree as to the temporal limits on the "under a physician's care" criterion, even Hezel has not contended that the other eligibility criterion--that the employee be unable to perform the duties of his occupation--could be effectively satisfied after the date of termination. In other words, it is undisputed that the disability must prevent the employee from performing his job when he still holds that job. Thus, we read the clause stating that the employee is "unable to perform the duties of[his] occupation" to mean that the employee is unable to perform the duties of his occupation while he is covered by the Plan, i.e., while he is still engaged in the occupation. Hezel apparently does not disagree with our reading. Indeed, any other reading would be rather peculiar, as it would extend coverage to former AON employees who became disabled long after they ceased working for AON.
 
 
 11
 We see no convincing reason to read the "under a physician's care" clause differently from the "unable to perform" clause. The two parallel provisions should both be understood to include the same temporal limitation: the employee must be both unable to perform and under a physician's care while he is still covered by the Plan; otherwise, he is not "totally disabled," within the meaning of the Plan.
 
 
 12
 Third, if the drafters of the Plan had intended to broaden its coverage as significantly as Hezel suggests, they surely would have gone into considerable detail, in the text of the Plan, as to what types of disabling conditions fall within that broadened coverage, and what type of showing a claimant must make before receiving benefits. The absence of any such provisions in the Plan suggests that Hezel's reading is contrary to the intent of the Plan's drafters.
 
 
 13
 We therefore conclude that the Plan's "total disability" provision is unambiguous: an employee must meet both the "unable to perform" and the "under a physician's care" criteria while the employee is still covered by the Plan. Because Hezel indisputably did not come under the regular care and attention of a legally licensed physician until several months after his employment (and his coverage) had been terminated, he was ineligible for disability benefits under the Plan. The Plan Administrator properly denied Hezel's claims and the district court properly granted summary judgment in favor of the defendants.[2]
 
 
 14
 In so holding, however, we stress that we are not unsympathetic to Hezel's claim. Unlike an acute physical injury, such as a broken leg or a wrenched back, the onset of Alzheimer's Disease is slow and may not be readily apparent to the afflicted individual. Alzheimer's Disease and other brain disorders may rob a person not only of his ability to perform his job adequately, but also of his ability to realize that he should seek medical help. Indeed, in some instances, it may be the termination itself that triggers the first trip to the doctor's office. Therefore, the drafters of ERISA plans would be well advised to consider, and (if they so choose) expressly to provide for, the insidious nature of such disorders. In the present case, however, the drafters of the AON Plan failed to do so, and we are not at liberty to supply the very terms they omitted. Cf. Lockhart v. United Mine Workers of Am.1974 Pension Trust, 5 F.3d 74, 78 (4th Cir.1993).
 
 
 15
 Accordingly, the judgment of the district court is
 
 
 16
 AFFIRMED.
 
 
 
 [1]
 In describing the Plan, see infra, we rely on the summary plan description. See Aiken v. Policy Management Sys. Corp., 13 F.3d 138, 140-41 (4th Cir.1993)
 
 
 [2]
 Because we conclude that the relevant language in the Plan is unambiguous, we need not determine the proper standard for reviewing the denial of disability benefits under the Plan. Even under a de novo standard of review, the defendants would be entitled to judgment as a matter of law