[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JUL 11, 2006
THOMAS K. KAHN
CLERK

No. 05-14317
Non-Argument Calendar

_____

D.C. Docket No. 04-00121-CV-T-27-MAP

CRAIG STREIT,

Plaintiff-Appellee,

versus

GUARDIAN LIFE INSURANCE
COMPANY OF AMERICA,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

**(July 11, 2006)**

Before EDMONDSON, Chief Judge, BLACK and BARKETT, Circuit Judges.

PER CURIAM:

Defendant-Appellant The Guardian Life Insurance Company of America ("Guardian"), "Claims Administrator" of the employee welfare benefit plan of Tantivy Communications, Inc. ("Tantivy"), appeals the grant of summary judgment in favor of Plaintiff-Appellee Craig Streit on Plaintiff's claim for disability benefits under the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001 et seq. ("ERISA"). No reversible error has been shown; we affirm.

The material undisputed facts show that Plaintiff began his employment at Tantivy on 1 April 2001 as a Vice President for Marketing and that he worked on a full-time basis through the end of the workday on 14 September 2001, at which time Plaintiff's employment was terminated. Plaintiff's coverage under Tantivy's ERISA disability plan was in effect until 11:59 p.m. on 14 September 2001: coverage ceased at 11:59 p.m. on the date his employment ended.

Plaintiff sought medical care after his termination for stress and depression stemming from the attacks of September 11 and his termination by Tantivy; he later filed a disability benefits claim. The psychologist with whom Plaintiff began therapy on 1 October 2001, Dr. Fairchild, completed the physician section of the disability claim form for Plaintiff; he stated that Plaintiff suffered from major depression and post-traumatic stress disorder. Dr. Fairchild listed 11 September

2

2001 as the date on which Plaintiff's symptoms first appeared, and he listed 14 September 2001 as the date as of which Plaintiff became totally disabled. Guardian denied Plaintiff's claim;[1] Plaintiff appealed.

Plaintiff submitted additional information as part of the appeal process. Dr. Fairchild completed a questionnaire at Guardian's request and an Attending Physician's Statement. Dr. Fairchild stated that Plaintiff was completely unable to work, that his condition significantly impaired his ability to focus on the complex tasks required of his position and to perform the demanding cognitive functioning required of a Vice President of Marketing. Dr. Fairchild opined expressly that based on his "clinical experience and specific knowledge of [Plaintiff's] case, it is my professional opinion that his total disability commenced on September 14, 2001."

Plaintiff also submitted a letter from his primary care physician, Dr. Atkinson. Plaintiff had an appointment with Dr. Atkinson within a week of his termination,[2] and it was Dr. Atkinson who had referred Plaintiff for therapy. Dr. Atkinson stated in his letter that based on his "clinical experience and specific

_____

[1]Guardian denied the claim stating that Plaintiff's physician had certified that disability did not begin until 1 October 2001. It appears that Guardian misread Dr. Fairchild's certification; it stated clearly that 14 September 2001 was the date Plaintiff became totally disabled.

[2]Plaintiff's 20 September 2001 appointment with Dr. Atkinson was the earliest available non-emergency appointment that Dr. Atkinson's schedule allowed.

knowledge of [Plaintiff's] case, it is my professional opinion that his total disability commenced on September 14, 2001, and was precipitated by events that occurred on September 11 and September 14, 2001." Guardian denied benefits on appeal; Guardian premised the denial on the fact that no treatment was rendered before 20 September 2001 and a claimed absence of information to "conclusively document a functional impairment" which would have precluded Plaintiff from performing his duties by the date he claimed total disability.

Plaintiff submitted additional documentation to Guardian. The claim file included psychological testing performed on Plaintiff, letters from Plaintiff's treating physicians, and records and treatment notes from these health providers. Drs. Atkinson and Fairchild also invited Guardian to contact them if anything additional was needed regarding confirmation of the diagnosis and assessment of Plaintiff's condition. Also included in the claim file was a disability determination of the Social Security Administration that Plaintiff was disabled with a disability onset date of 14 September 2001. Guardian continued to uphold its claim denial; this suit ensued.

The district court determined that no reasonable grounds supported Guardian's claim denial decision. Irrespective of the standard of review applicable to Guardian's decision -- de novo, arbitrary and capricious, or

4

heightened arbitrary and capricious -- the district court concluded Guardian's claim denial was due to be reversed. We agree.

First, Guardian argues that it construed Plan documents to require that an employee receive medical treatment for the alleged disabling condition while the employee is covered by the Plan. According to Guardian, irrespective of the onset of complete disability, a claimant is entitled to no benefits unless treatment begins before coverage terminates. Because Plaintiff received no medical treatment until six days after his employment (and coverage) terminated, Guardian argues that, under de novo review, its benefits denial applied properly Plan terms.

The Plan provides expressly that it covers total disability only if that total disability starts while an employee is insured under the Plan. The Plan provides no express exclusion for total disability that starts while an employee is insured but for which treatment is not obtained before coverage terminates. The Plan does provide that "[a]n employee will not be considered disabled under this plan if he or she is not under the regular care and treatment of a doctor," but no requirement is stated that such "regular care and treatment" be obtained before coverage terminates.[3] Plaintiff has been under the regular care and treatment of physicians;

_____

[3]Presumably "regular care and treatment" means treatment over time. Query how long Guardian would require a claimant to be disabled and under treatment before the claimant can show sufficient treatment to be considered disabled under the Plan.

5

that this treatment did not commence within moments of the alleged onset of disability provides no reasonable grounds for Guardian's claim denial.[4] Guardian's interpretation of the Plan is wrong under de novo review. Although a wrong but apparently reasonable interpretation of a Plan may be affirmed under an arbitrary and capricious standard of review if the Plan administrator is granted discretion,[5] Guardian's imposition of new hurdles to eligibility is without reasonable basis; its interpretation of the Plan can not survive even the most deferential standard of review.[6]

Guardian argues that, even if a claimant could qualify for disability under the Plan when treatment commences after Plan coverage otherwise terminates, it would be a virtual impossibility for Plaintiff's physicians to attest to his

---

[4]In support of its strained construction, Guardian cites an unpublished decision from the Fourth Circuit, Hezel v. Aon Corp., 1994 WL 320231 (4th Cir. 1994). The plan in Hezel, however, provided a two-part definition of total disability: "Total disability means that you are under the regular care and attention of a legally licensed physician and that you are unable to perform the duties of your occupation." Id. at *1. The plan did not say when these criteria must be met. The Hezel court determined that it would be peculiar to read the plan other than to require the disability to occur during coverage. Under the plan's definition of total disability, the Hezel court saw no reason to impose a temporal limitation on the unable to perform clause and not impose the same limitation on the treatment clause. In the Plan we review, a temporal limitation expressly is imposed on the disability onset and no express temporal limitation applies to treatment.

[5]The parties disagree over the standard of review that should apply. Because we agree with the district court that Guardian's claim denial fails under the most deferential standard, we need not unravel the parties conflicting contentions about whether (i) Tantivy granted Guardian discretionary authority; and (ii) Guardian acted under a conflict of interest.

[6]In Williams v. BellSouth Telecommunications, Inc., 373 F.3d 1132, 1137-39 (11th Cir. 2004), we set out the different levels of judicial review to be applied to ERISA-plan benefit denials.

psychiatric condition after his termination on 14 September but before his coverage terminated at 11:59 p.m. Guardian complains that the physician statements attesting to the onset of Plaintiff's disability by 11:59 p.m. on 14 September were (i) after the fact; (2) conclusory; and (3) based on Plaintiff's self-reporting. Guardian argues that it could reasonably discount those statements and could deny benefits without obtaining a contrary medical evaluation. Simply stated, Guardian contends that Plaintiff failed to carry the burden of proof: Plaintiff's inability to substantiate the onset of his total disability with medical evaluation performed before policy termination was, according to Guardian, fatal to Plaintiff's claim. Again, we disagree.[7]

We recognize that "'[n]othing in [ERISA] ... suggests that plan administrators must accord special deference to the opinions of treating physicians [,n]or does [ERISA] impose a heightened burden of explanation on administrators when they reject a treating physician's opinion.'" Shaw v. Connecticut General Life Ins. Co., 353 F.3d 1276, 1287 (11th Cir. 2003), quoting Black & Decker Disability Plan v. Nord, 123 S.Ct. 1965, 1970 (2003) (alterations in original). But

---

[7]We accept that, as a general rule, the ERISA plaintiff bears the burden of proving entitlement to benefits. See Horton v. Reliance Standard Life Ins. Co., 141 F.3d 1038, 1040 (11th Cir. 1998). We do not accept that medical opinion reasonably may be ignored just because it looks backward as well as forward. We do not doubt that such opinion may be challenged; Guardian proffered no contrary evidence.

in this case, Guardian proffered no evidence that conflicted with the medical evaluations of Plaintiff's physicians which affirmed consistently that Plaintiff's termination triggered immediately his total disability. Guardian requested no examination of Plaintiff by a physician of their choosing, made no inquiry of Plaintiff's physicians (although such inquiry was invited), and subjected Plaintiff's medical records to no independent review. Shaw and Nord counsel that "'courts have no warrant to require administrators automatically to accord special weight to the opinions of a claimant's physician;'" but the decisions provide no support for a plan administrator's "'arbitrarily refus[ing] to credit a claimant's reliable evidence, including the opinions of a treating physician.'" Shaw, 353 F.3d at 1287, quoting Nord, 123 S.Ct at 1972.

Medical records, treatment notes, physician letters, and physician questionnaires were presented to Guardian in support of Plaintiff's claim that he became totally disabled before coverage expired on 14 September 2001. In the light of this uncontradicted evidence, we see no district court error: Guardian's denial of Plaintiff's claim based on its contention that Plaintiff failed to substantiate his total disability was without reasonable grounds. See Levinson v.

<u>Reliance Standard Life Ins. Co.</u>, 245 F.3d 1321 (11th Cir. 2001). Guardian's denial

was wrong and can not survive even the most deferential review.[8]

AFFIRMED.

---

[8]As did the district court, we recognize that the result here -- receipt of disability benefits for a disability triggered by termination when the very same termination cancels coverage at the end of the day -- is somewhat surprising. This result, however, is compelled by the surprising state of the record: the claim file upon which Guardian rendered its benefits denial contained no evidence to rebut medical documentation substantiating the claim.